[No. 1813. Decided February 24, 1896.]

JAMES F. CASS *et ux.*, *Appellants*, v. JAMES DICKS *et al.*,
*Respondents.*

SURFACE WATER — DAMAGE TO ADJOINING PROPRIETOR BY OBSTRUCTING
FLOW.

The owner of land may erect dikes upon it to prevent the influx
of surface water from the higher adjoining lands of his neighbor,
and if such water is checked in its natural flow or drainage to the
injury of his neighbor, it affords no cause of action. (DUNBAR, J.,
dissents).

Appeal from Superior Court, Skagit County.—Hon.
HENRY McBRIDE, Judge.   Affirmed.

*S. H. Piles*, for appellants.

*George A. Joiner*, and *Million & Houser*, for respond-
ents.

The opinion of the court was delivered by

ANDERS, J.—The appellants are owners of a farm
in Skagit county, situated in the upper or northerly
end of the delta lying between the north fork of Skagit
river and an off-shoot or branch thereof known as
Dry Slough.   Their land is bounded on the north and
west by the river and on the east by the slough.   All
the land lying between these streams is fertile and
productive agricultural land, but, being low, is liable
to inundation at times of high water, unless protected
from overflow by means of dikes or embankments.
Respondents, or at least a majority of them, own land
below that of appellants.   From the northern extrem-
ity of appellants' land the general surface of the ground
gradually descends towards the south so that the water
which escapes over the banks of the streams naturally
flows in that direction.   Before this controversy arose

the whole country between the two streams was protected, though imperfectly, by dykes erected along the margin of the river and that of Dry Slough, which is itself a considerable stream. Appellants' land-is somewhat lower in the center than on either side, and when the water in the streams is higher than the ordinary stage, a portion of it percolates through the banks and soil and finds its way to the lower ground where it remains until the water in the river and slough falls, after which it passes off through the soil or sinks beneath the surface. Prior to the commencement of this action, defendants, pursuant to an act of the legislature concerning public dikes and dams, approved February 2, 1888, and the amendments thereto, organized a diking district, including the land south of that of appellants. Upon the organization of the district the respondent, Charles Johnson, was appointed dyke supervisor by the county commissioners, and was proceeding to erect a large and permanent dyke and roadway from the river to Dry Slough, upon and along the northern boundary of Hansen's farm, and parallel with the south line of appellants' land, for the purpose of preventing their lands from being flooded and damaged by the overflow of the streams during extraordinary freshets, when appellants instituted this action to enjoin the erection thereof. A temporary injunction was asked for, and, after a hearing, was denied, and thereupon the work was resumed and continued until practically completed. Appellants then filed a supplemental complaint, setting up the fact that the dike had been completed after the filing of their original complaint, and alleging that, as constructed, it would prevent the seepage, surface water and overflow from flowing south from their premises as it was accustomed to do, and thereby destroy their

crops, pasture and fruit trees, and render their farm valueless for the purposes for which it was used, and praying for a mandatory injunction compelling the removal of the dike. Upon the final hearing the court found as a fact that no damage has or will result to appellants, or their property, by reason of the construction or maintenance of the dike, and, as a conclusion of law, that appellants were not entitled to an injunction, and thereupon entered judgment dismissing the complaint at the costs of appellants.

Several errors are assigned by appellants which it is unnecessary to discuss in detail, for the reason that the correctness and propriety of the judgment depend wholly upon the question whether or not the respondents, either as individuals or as an association or as a *quasi* corporation, have a right to protect their lands from damage caused by water flowing over the same from the premises of appellants, either as surface water or water escaping over the banks of the surrounding streams, if, by so doing, the lands of appellants may be injured to a greater or less degree. Of course, if it be true as the court found, that the dike in controversy will cause no damage to their land, it necessarily follows that appellants are not entitled to the relief demanded, and that the judgment of the trial court must be affirmed.

It must be borne in mind that the water, the flow of which will be obstructed by the dike, is not the current of a natural stream, and therefore the law determinative of the rights of riparian proprietors is not at all applicable to the case in hand. The water which passes from the premises of appellants does not flow in a defined channel, having a bed and banks, and, consequently, is to all intents and purposes surface water, and the rights of the respective parties in re-

gard thereto must be determined by the law relating solely to surface water. And as to these rights, the decisions of the courts in the various states are far from uniform. The courts of some of the states have adopted the rule of the civil law, by virtue of which a lower estate is held subject to the easement or servitude of receiving the flow of surface water from the upper estate. Under that rule it is clear that the flow of mere surface water from the premises of an upper proprietor to those of a lower may not be obstructed or diverted to the damage of the latter. But the contrary rule of the common law has been adopted in many of the states and must be followed in this case, because it is neither inconsistent with the constitution and laws of the United States nor of this state, nor incompatible with the institutions and condition of society in this state. Code Proc., § 108.

By that law surface water, caused by the falling of rain or the melting of snow, and that escaping from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others. The rule is based upon the principle that such water is a part of the land upon which it lies, or over which it temporarily flows, and that an owner of lands has a right to the free and unrestrained use of it, above, upon and beneath the surface. 24 Am. & Eng. Enc. Law, pp. 906, 917; Angell, Watercourses, (7th ed.) § 108 o.

If one in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is *damnum absque injuria*. Mr. Angell, after

quoting from a leading Massachusetts decision, observes:

"It makes no difference in the application of this rule that land is naturally wet and swampy. A conterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dikes, the erection of structures, or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface. Such consequences are the necessary result of the lawful appropriation of land, whatever may be its nature, and although they may cause detriment and loss to others."

And Mr. Gould, in § 263 of his excellent work on Waters (2d ed.), says:

"By the common law no rights can be claimed *jure naturæ* in the flow of surface water, and its detention, expulsion or diversion, is not an actionable injury, even when injury results to others."

And in § 275, he further says:

"The owner of land may erect barriers upon it to prevent the influx of surface water whether collected in artificial channels or not, and if such water is set back or turned aside upon the land of another, to his injury, it affords no cause of action."

Mr. Weeks lays down the law on this subject as follows:

"If a land owner whose lands are exposed to inroads of the sea, or to inundations from adjacent creeks or rivers, erects sea-walls or dams, for the protection of his land, and by so doing causes the tide the current, or the waves to flow against the land of his neighbor, and wash it away, or cover it with water, the landowner so causing an injury to his neighbor is not responsible in damages to the latter, as he has done no wrong, having acted in self-defense and having a right to protect his land and his crops from inundation." Weeks, Damnum Absque Injuria, pp. 3 and 4.

The same doctrine is maintained in the following cases : *Mo. Pac. Ry. Co. v. Keys,* 55 Kan. 205 (40 Pac. 275); *Hoard v. DesMoines,* 62 Iowa, 326 (17 N. W. 527); *Shelbyville & B. T. Co. v. Green,* 99 Ind. 205; *Cairo & V. R. R. Co. v. Stevens,* 73 Ind. 278 (38 Am. Rep. 139); *Taylor v. Fickas,* 64 Ind. 167 (31 Am. Rep. 114); *Mailhot v. Pugh,* 30 La. An. 1359; *Schneider v. Mo. Pac. Ry. Co.,* 29 Mo. App. 68; *Burke v. Mo. Pac. Ry. Co.,* 29 Mo. App. 370; *Bates v. Smith,* 100 Mass. 181; *Goodale v. Tuttle,* 29 N. Y. 459; *Hoyt v. City of Hudson,* 27 Wis. 656 (9 Am. Rep. 473); *Jones v. Hannovan,* 55 Mo. 462; *Imler v. City of Springfield,* 55 Mo. 119 (17 Am. Rep. 645); *McCormick v. Kansas City, etc., R. R. Co.,* 57 Mo. 433; *Abbott v. Kansas City, etc., R. R. Co.,* 83 Mo. 271 (53 Am. Rep. 581); *Bowlsby v. Speer,* 31 N. J. 351 (86 Am. Dec. 216); *Gannon v. Hargadon,* 10 Allen, 106 (87 Am. Dec. 225); *Dickinson v. Worcester,* 7 Allen, 19; *Bangor v. Lansil,* 51 Me. 521; *Parks v. Newburyport,* 10 Gray, 28.

The supreme court of California, while holding that a lower proprietor has no right to obstruct the passage over his land of surface water resulting from rain, snow or springs, declares that a proprietor of higher land bordering on a river cannot enjoin the erection of a levee or embankment by the proprietor of the lower land adjoining his in the rear, the design of which is to prevent the overflow of the river from flooding the lower land, though such embankment may increase the accumulation of flood water on the higher land the owner of the higher land having like means of protecting his own land. *McDaniel v. Cummings,* 83 Cal. 515 (23 Pac. 795).

See, also, *Lamb v. Reclamation District,* 73 Cal. 125 (2 Am. St. Rep. 775, 14 Pac. 625), and *Gray v.*

*McWilliams*, 98 Cal. 157 (35 Am. St. Rep. 163, 32 Pac. 976).

Now, it clearly appears from the evidence in this case that the appellants can protect their land from overflow by repairing and raising the dikes which they have hitherto depended upon for their protection against floods and freshets. If they refuse to do.so, they, and not others, must suffer the consequences. They have a perfect right to permit their own land to be flooded, and the respondents have no right to prevent them from doing so, but we think they have no legal right to prevent the respondents from resorting to any proper means of self-protection.

We have thus far proceeded upon the theory that the dike complained of will set back the water upon appellants' land, and that injury will thereby result. The trial court, however, as we have already observed, found the facts to be otherwise, and although the evidence upon that point is conflicting, we are unable to say that the conclusion of the court is not fairly sustained by the evidence. It appears from the undisputed proofs that the land included within the diking district has not hitherto been drained directly into the sea, but into the contiguous streams, and especially into Dry Slough, the bed of which is lower than the adjoining land. It further appears that a ditch has been excavated along the north side of the dike from Dry Slough to the river, in which boxes have been or will be placed to carry off all surplus water. And, according to the testimony of several of the witnesses, this ditch will convey away all surface water and seepage which will ordinarily flow from appellants' land; and, if that is so, they have no cause of complaint so far as ordinary surface water is concerned. For pro-

6—14 WASH.

tection against floods and sudden freshets they must
rely upon their own exertions.    The respondents have
done no illegal act and therefore ought not to be com-
pelled to undo what they have done at great expense
and as a means of self-protection.

The judgment must be affirmed.

HOYT, C. J., and GORDON and SCOTT, JJ., concur.

DUNBAR, J., dissents.