[No. 4240.    Decided September 10, 1902.]

M. F. NOYES *et al., Respondents,* v. W. W. COSSELMAN
*et al., Appellants.*

SURFACE WATER—ARTIFICAL DIVERSION OVER LANDS OF ADJOINING
OWNER.

An owner of land upon which there is a natural accumulation
of water into a swamp or lake, has no right to improve his land
by draining such waters from one portion of his land through a
natural barrier to another portion, whence it would escape over
the lower lands of an adjoining proprietor; and the fact that the
latter had the right to protect himself against such waters by
diking or ditching would not cause the act to fall under the

rule of *damnum absque injuria.* (*Cass v. Dicks*, 14 Wash. 75, distinguished.)

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*Graves & Graves,* for appellants.

*Poindexter & Kimball,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—Plaintiffs are the owners of several tracts of land comprising about 450 acres, in Spokane county. These lands are flat and level, having formerly been swamps, but in the last eighteen years have been drained by means of ditches at large expense to the plaintiffs, so that they are now valuable hay lands, producing annually large crops of timothy hay. Lying to the southwest of the lands of plaintiffs is a large marsh, about three miles in length, of varying width, comprising about 375 acres of land. This marsh, commonly called "Long Lake," is in a natural depression on defendants' lands, which are contiguous to and adjoin plaintiffs' lands. Water accumulates in this marsh to a depth of from four inches to two feet each year from rains and melted snows, which fall upon an area of several square miles to the north and west. This water has no outlet from the marsh except at extreme wet seasons, when it overflows through a depression in a natural barrier on defendants' land and runs off into a small pond, also on defendants' lands, and thence runs off over the lands and through the ditches made by plaintiffs. At other seasons of the year the waters of this swamp are dissipated by evaporation and percolation until about the month of June, when the lake becomes nearly dry. On the lands of defendants, and between Long lake and the pond above referred to, is a natural

barrier some four feet in height and about two hundred feet wide. There is a natural depression in this barrier, through which the water runs from Long lake into the pond when the water is deepest in wet seasons. When plaintiffs began the construction of the ditches which now drain their lands they requested the defendant Cosselman, who owns the greater part of Long lake, to join them, which he refused to do. The lands of defendants, on which Long lake is situated, are about six feet higher than the lands of plaintiffs, and the defendants were engaged in digging a ditch and widening the depression in the natural barrier above referred to, so as to drain the water from Long lake, when this suit was begun to restrain them therefrom. The lower court found upon the trial, we think correctly, that, if the defendants proceed to complete said ditch as they intend and have commenced, then the waters of Long lake will be drained upon the lands of plaintiffs, and will entirely destroy the crops of timothy now growing thereon, and render said lands, or a great portion thereof, incapable of cultivation until the same shall again be drained at great labor and expense.

There is but one question to be determined in this case, namely, have the defendants the right to improve their property by draining this swamp, Long lake, from one portion of their land to another, whereby injury will result to the plaintiffs if they do not take steps to protect themselves by diking or ditching against the waters thus turned upon them?

The appellants here rely upon the rule announced by this court in *Cass v. Dicks,* 14 Wash. 75 (44 Pac. 113, 53 Am. St. Rep. 859), which was a case where lands lying along a river were subject to inundation at times of high water unless protected by means of dikes. The defendants in that case were lower proprietors, and were proceeding

to erect a large dike for the purpose of preventing their lands from being flooded during extraordinary freshets. The plaintiffs brought the action to restrain the erection of the dikes upon the ground that the same would prevent the seepage, surface water, and overflow from flowing from their premises, as it was accustomed to do, and thus destroy their crops and render their farm valueless. This court, passing upon the question there presented, said:

"The courts of some of the states have adopted the rule of the civil law, by virtue of which a lower estate is held subject to the easement or servitude of receiving the flow of surface water from the upper estate. Under that rule it is clear that the flow of mere surface water from the premises of an upper proprietor to those of a lower may not be obstructed or diverted to the damage of the latter. But the contrary rule of the common law has been adopted in many of the states and must be followed in this case, because it is neither inconsistent with the constitution and laws of the United States nor of this state, nor incompatible with the institutions and condition of society in this state. Code Proc., § 108.

"By that law surface water, caused by the falling of rain or melting of snow, and that escaping from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others. The rule is based upon the principle that such water is a part of the land upon which it lies, or over which it temporarily flows, and that an owner of lands has a right to the free and unrestrained use of it, above, upon and beneath the surface. 24 Am. & Eng. Enc. Law, pp. 906, 917; Angell, Watercourses, (7th ed.) § 108o.

"If one in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is *damnum absque injuria.*"

It was therefore held that the lower proprietor had a right to construct the dike in order to protect his own land. And it is argued in this case that the appellants here have a right to drain the water which accumulates in Long lake from rains and melting snows through an artificial ditch built for that purpose through a natural barrier upon their own land, and cast the same upon lower lands of their own, from whence it is cast upon respondents' lands, and that the damage thus caused to respondents is *damnum absque injuria;* that the only remedy of respondents is to dike against the flow of water, and thereby keep it upon the lands of appellants, or to construct ditches to carry off the increased water. If the position of appellants that respondents may dike against the water thus turned upon them is correct, under the rule announced in *Cass v. Dicks, supra,* still we do not think it necessarily follows that the appellants may by artificial means turn the water from Long lake upon other parts of their own lands, to the injury of respondents. The rule that an owner of land has no right to rid his land of surface water by collecting it in artificial channels, and discharging it upon the land of an adjoining proprietor, to his injury, is followed alike in the states which have adopted the common law as well as those which have adopted the rule of the civil law. 24 Am. & Eng. Enc. Law, p. 931; Gould, Waters (3d ed.), § 271; Angell, Watercourses (7th ed.) § 108j; Washburn, Easements, * p. 353; *Barkley v. Wilcox,* 86 N. Y. 140 (40 Am. Rep. 519); *Templeton v. Voshloe,* 72 Ind. 134 (37 Am. Rep. 150); *Schuster v. Albrecht,* 98 Wis. 241 (73 N. W. 990, 67 Am. St. Rep. 804); *Jackman v. Arlington Mills,* 137 Mass. 277; *Hogenson v. St. Paul, M. & M. Ry. Co.,* 31 Minn. 224 (17 N. W. 374); *Illinois Central R. R. Co. v. Miller,* 68 Miss. 760 (10 South. 61); *Brandenburg v. Zeigler,* 39 S. E. 790 (55

L. R. A. 414); *Kelly v. Dunning,* 38 N. J. Eq. 482. The foregoing cases are from states adopting the common law rule; the following are from states adopting the civil law rule: *Anderson v. Henderson,* 124 Ill. 164 (16 N. E. 232); *Gregory v. Bush,* 64 Mich. 37-42 (31 N. W. 90, 8 Am. St. Rep. 797); *Butler v. Peck,* 16 Ohio St. 334 (88 Am. Dec. 452); *Kauffman v. Griesemer,* 26 Pa. St. 407 (67 Am. Dec. 437); *Paddock v. Somes,* 102 Mo. 226 (14 S. W. 746, 10 L. R. A. 254); *Cloverdale v. Smith,* 128 Cal. 230 (60 Pac. 851); *Livingston v. McDonald,* 21 Iowa, 160 (89 Am. Dec. 563).

In *Barkley v. Wilcox,* 86 N. Y. 147, the court says:

"The owner of wet and spongy land cannot, it is true, by drains or other artificial means, collect the surface water into channels, and discharge it upon the land of his neighbor to his injury. This is alike the rule of the civil and common law. . . . But it does not follow, we think, that the owner of land, which is so situated that the surface waters from the lands above, naturally descend upon and pass over it, may not in good faith, and for the purpose of building upon or improving his land, fill or grade it, although thereby the water is prevented from reaching it and is retained upon the lands above. There is a manifest distinction between casting water upon another's land, and preventing the flow of surface water upon your own."

In *Jackman v. Arlington Mills,* 137 Mass. 283, the court says:

"We take the law to be, that the owner of land has no right to collect the surface water into an artificial stream, and discharge it upon the adjoining land of another in such quantities and in such a manner as materially to injure the land; but that such an owner has the right to collect the surface water and the natural drainage of his land into an artificial stream, and discharge it into a natural water course on his own land, if the water course is the natural outlet of the waters thus collected, even al-

though, by this artificial arrangement, the flow of the waters is accelerated, and the volume at times is increased, provided that this is done in the reasonable use of his own land, and that the discharge is not beyond the natural capacity of the water course, and the land of a riparian owner is not thereby overflowed, and materially injured. *But he has no right to subject the land of another to a servitude of running water to which it is not naturally subject."*

In *Hogenson v. St. Paul, etc., Ry. Co.,* 31 Minn. 226, it is said:

"The acts of the defendant amount to this: That, being incommoded by the presence of surface waters on its lands, it, by means of ditches, accumulates them and transfers them to the lands of others, where they would not otherwise go, to the damage of the latter lands. Without a grant of the right, it cannot do this. The right of an owner to improve his land for the purpose for which such land is ordinarily used, and to do it in the ordinary manner, as by building on it, or raising the surface where necessary to its improvement, even though as an incident to it the rain and snow waters falling on it may be diffused over adjoining land, was conceded *arguendo* in *O'Brien v. City of St. Paul,* 25 Minn. 331. Without determining whether that right may not be qualified by the circumstances of particular cases, we are prepared to say that that is as far as it is safe to go, and that it does not include the right to gather the surface waters on one's land and turn them upon the land of another, to its damage, even though the former land may as a consequence thereof be improved. In other words, he may not in this way improve his own land, by merely transferring to the land of another a burden which nature has imposed on his own land."

In *Brandenburg v. Zeigler, supra,* p. 792, it is said:

"When one having the right to cut off surface water from his land nevertheless permits such water to collect in a natural basin on his land, he has an absolute right

41—29 Wash.

of property in such water, and may use it exclusively as his own. His dominion over such water is as great as his dominion over the realty upon which it rests, and of which it is a part. He can no more cast such water, by artificial means, injuriously upon his neighbor, than he could cast the mud or soil upon his neighbor's premises. In either case he would violate the neighbor's right of dominion over his own property. The absolute right of the lower proprietor to embank against the flow of surface water, and thereby cause it to rest upon the upper proprietor's land, is wholly irreconcilable with the claimed right of the upper proprietor by artificial means to collect and cast such water upon the lower proprietor."

The cases quoted from are from states adopting the rule of the common law. The cases cited above from states adopting the civil law rule are to the same effect. When these waters are accumulating in Long lake they are, under the rule announced in *Cass v. Dicks,* a common enemy, against which any one may defend himself; but when they are permitted to accumulate in the basin which forms the lake on appellants' land they become a part of the land, and the appellants have the exclusive use and control thereof, but they may not shift the same from one part of their land to another, to the material injury of their neighbor. The fact that the waters are not accumulated by means of artificial ditches into the main body of the lake, but do accumulate there by natural means, can make no difference. When the waters are confined by natural barriers, so that the same do not run from such confinement naturally, the appellant may not construct a ditch on his own land so as to cast the waters which do not naturally pass therefrom on to his neighbor, to the material injury of such neighbor. This rule is not in conflict with the rule announced in *Cass v. Dicks,* but is in consonance with it, and is in accord with the great weight of authority.

The judgment of the lower court in restraining the appellants from constructing the ditch through the barrier on their own land, and thereby casting waters onto the lands of the respondents to their injury, was right, and the judgment is therefore affirmed.

REAVIS, C. J., and ANDERS, HADLEY, FULLERTON, DUNBAR and WHITE, JJ., concur.