[No. 9016.  *En Banc.*  June 26, 1911.]

NOBLE G. HARVEY, *Appellant,* v. NORTHERN PACIFIC
RAILWAY COMPANY, *Respondent.*[1]

WATERS AND WATER COURSES—SURFACE WATERS—FLOODS—PROTEC-
TION AGAINST—LIABILITY.  Flood waters overflowing the banks of a
stream are surface waters, an outlaw and common enemy, against
which a riparian owner may protect itself by turning the same back
into the stream; and if a lower proprietor is thereby injured by
eddies and currents different from the natural flow of the stream,
it is *damnum absque injuria,* for which no recovery can be had.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered May 17, 1910, upon sus-
taining a demurrer to the complaint, dismissing an action in
tort.  Affirmed.

*John W. Miller* and *Robert McMurchie,* for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for re-
spondent.

CROW, J.—This action was commenced to recover dam-
ages resulting from an alleged discharge of water upon plain-
tiff's lands.  The trial judge sustained a demurrer to the
amended complaint.  Plaintiff refused to plead further, and
has appealed from an order of dismissal.

The following plat is attached to the amended complaint,
and by proper allegations made a part thereof:

[1]Reported in 116 Pac. 464.

EXHIBIT A

The amended complaint alleges:

"That ever since the 15th day of October, 1892, the plaintiff has been, and now is, the owner and in possession of the following described real estate, situated in the county of Snohomish, state of Washington, to wit: (description of twenty acres.)

"That about five hundred (500) feet to the east of said described tract of land is the right of way of the defendant, over which there is built a railroad, now, and at the time of the damage hereinafter complained of, owned by the defendant.

"That the map or plat hereto attached, marked Exhibit 'A' and made a part hereof, correctly shows the location of the lands of the plaintiff hereinbefore described, the location of the railroad of the defendant, the location of the railroad owned by the Great Northern Railroad Company, and location of the Snohomish river, which flows in a general northerly and north-easterly direction through the lands shown on the east side of said plat, and thence in a westerly direction through the lands shown on the north side of said plat.

"That lying in a general westerly direction from the lands shown in said plat, and including the same, is a large river bottom many miles in extent . . . commonly known in the local vicinity as 'The Marsh.'

"That along the bank of the Snohomish river there exists a sort of rim, varying from two hundred and fifty (250) to fifty (50) yards in width, which is higher than that portion of the bottom land farther from the river, excepting at certain points, where said rim is broken by natural water courses running into said river.

"That for more than sixty (60) years past, the Snohomish river has been subject to floods at frequently recurring intervals, at which time the waters of said river escaping from the ordinary channel and overflowing its banks, spread over the said bottom land to a depth of about two feet to six feet, continuing to flow in the same general direction as the waters in the ordinary channel of said river to its mouth, and such portions thereof as do not flow over the rim, are discharged into the channel of the river when the flood subsides, through numerous natural water courses and channels, carrying and draining themselves into the river.

"That in times of flood, sufficient to overflow said bottom lands, the waters of said Snohomish river have been accustomed to leave its banks at points thereon, easterly and southerly from where the track of said defendant crosses said bottom lands, and are distributed over practically the entire area of said bottom, and flow with an easy current.

"That for a long time prior to the filling in of the trestles hereinafter described by the railway of the defendant over said bottom lands, the Great Northern Railroad Company did maintain, and ever since has maintained its track over said lands where the same is now located, upon an embankment, composed of earth, sand, gravel and rock, substantially the same as at the present time.

"That the tracks of the defendant crossing said bottom land were originally built partly on an embankment and partly on a trestle, the embankment and trestle being substantially from ten to twenty feet in height; that there was a trestle from the south bank of the Snohomish river to a point about eight hundred (800) feet south of the track of the Great Northern Railroad Company, marked on the plat hereto attached, and hereinbefore referred to, 'end of old trestle'; that there was a trestle of about three hundred (300) feet in length at the point on said plat marked 'A'; a trestle about six hundred (600) feet in length at the point marked 'B' on said plat; a trestle about two hundred (200) feet in length at the point marked 'C' on said plat, and a trestle about six hundred (600) feet in length at the point marked 'D' on said plat; that while said trestles were open, the flood waters of the Snohomish river passed through the same and the flow thereof was not materially interrupted or changed.

"That the defendant has caused its said trestles to be filled at the points marked on said plat 'A,' 'B,' 'C' and 'D,' as aforesaid, and from the point marked 'end of old trestle' to about twenty (20) feet from the embankment of the Great Northern Railroad Company, using to make such fill dirt, sand, gravel, stone and rocks; that the filling of such trestles, forms a dam or barrier across the whole of said river bottom to said Great Northern Railroad, which prevents the waters of the Snohomish river from flowing along their usual and accustomed course over said bottom lands, and turns said waters in a general northerly direction along the east side of said embankment, until it reaches the open space between the

end of such embankment and the Great Northern Railroad, where a powerful eddy is formed, and said waters are ejected in a current of tremendous force through the opening aforesaid, upon the bottom lands aforesaid, and the lands of this plaintiff, hereinbefore described."

The amended complaint further alleges that, in times of high water and overflow, the unnatural current and eddy thus created by appellant has caused and still causes large amounts of gravel and sand to be washed and deposited on appellant's tillable land, to his damage in the sum of $2,500.

The only question before us is the sufficiency of the amended complaint. Respondent insists the overflowing water from which it has protected itself, and of which appellant complains, is surface water, an outlaw and common enemy against which any property owner may defend himself, although in so doing he may cause injury to others, and that such injury is *damnum absque injuria*. Appellant contends under the common law the water is not surface water, but that, if it is, respondent is liable for appellant's damages sustained by reason of its collection upon respondent's lands, and the subsequent discharge upon appellant's land in a quantity greater than, and in a manner different from, its natural flow.

It is apparent from the amended complaint that the water escapes from the banks of the river at times of flood and freshets, and that prior to any interference by respondent, it scattered over a large area of low land belonging to appellant, respondent, and other parties. The question then arises, whether the water thus escaping from the river and flowing over these lands is surface water, or continues to be a portion of the stream. There is an irreconcilable conflict of authority upon this proposition.

"The decisions on the question whether the flood waters of watercourses in times of high water are to be regarded as surface water or water of the watercourse are in conflict. In some jurisdictions waters which overflow the banks of watercourses by reason of the insufficiency of the channel to carry off all the water are declared to be surface waters, and after

flood waters have lost all connection with the watercourse and cannot return thereto as the water subsides, they should, it would seem, be unquestionably considered as surface waters." 30 Am. & Eng. Ency. Law (2d ed.), p. 324, and cases cited, in note 7, including Cass v. Dicks, 14 Wash. 75, 44 Pac. 113, 53 Am. St. 859, from this state.

The question is not a new one in this state, and we feel constrained to follow the announcement in Cass v. Dicks, which seems to be directly in point. We have not only given the opinion in that case our careful consideration, but have also taken occasion to examine the original record, containing a plat of the land, the river, and the dry slough. From the record and plat, it indisputably appears that the waters of which the plaintiff in Cass v. Dicks complained came from the Skagit river during times of flood, escaped from the plaintiff's land, and naturally flowed therefrom over lands of the defendants. The plaintiff was located in a fork of the Skagit river and Dry slough. The defendants, to protect themselves from such escaping water, established a dike from the river bank upon the west to the slough upon the east, immediately south of plaintiff's land. This placed the plaintiff's land in an enclosure bounded by the river on the west and north, the dry slough on the east, and the dike on the south, and prevented the water which escaped from the river onto plaintiff's land from flowing over defendants' lands. The plaintiff was thus compelled to suffer an increased flooding of his lands, or to protect himself by diking or other means. The defendants in Cass v. Dicks contended that the water escaping from the Skagit river was surface water, an outlaw and common enemy against which they were entitled to protect themselves, and their contention was sustained. Anders, J., in writing the opinion of this court, first called attention to the rules of the civil and common law relative to surface water, held the common law rule prevails in this state, and speaking further of surface water, said:

"By that law [the common law] surface water, caused by the falling of rain or the melting of snow, and that escaping

from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others. The rule is based upon the principle that such water is a part of the land upon which it lies, or over which it temporarily flows, and that an owner of lands has a right to the free and unrestrained use of it, above, upon and beneath the surface. 24 Am. & Eng. Enc. Law, pp. 906, 917; Angell, Watercourses (7th ed.), § 108 o.  If one in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is *damnum absque injuria*.  Mr. Angell, after quoting from a leading Massachusetts decision, observes: 'It makes no difference in the application of this rule that land is naturally wet and swampy.  A conterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dikes, the erection of structures, or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface.  Such consequences are the necessary result of the lawful appropriation of land, whatever may be its nature, and although they may cause detriment and loss to others.'  And Mr. Gould, in § 263 of his excellent work on Waters (2d ed.), says: 'By the common law no rights can be claimed *jure naturae* in the flow of surface water, and its detention, expulsion or diversion, is not an actionable injury, even when injury results to others.' And in § 275, he further says: 'The owner of land may erect barriers upon it to prevent the influx of surface water whether collected in artificial channels or not, and if such water is set back or turned aside upon the land of another, to his injury, it affords no cause of action.'  Mr. Weeks lays down the law on this subject as follows: 'If a land owner whose lands are exposed to inroads of the sea, or to inundations from adjacent creeks or rivers, erects sea-walls or dams, for the protection of his land, and by so doing causes the tide, the current, or the waves to flow against the land of his neighbor, and wash it away, or cover it with water, the landowner so causing an injury to his neighbor is not responsible in damages to the latter, as he has done no wrong, having acted in self-defense and having a right to protect his land and his crops from inundation.'  Weeks, Damnum Absque Injuria, pp. 3 and 4."

It was thus held that the plaintiff was without remedy, and that for his protection against the floods and sudden freshets he should rely upon his own exertions, by diking or other proper means. The appellant here contends that *Cass v. Dicks* was, in effect, overruled by the later case of *Peters v. Lewis*, 28 Wash. 366, 68 Pac. 869, and materially distinguished in *Noyes v. Cosselman*, 29 Wash. 635, 70 Pac. 61, 92 Am. St. 937. In *Peters v. Lewis* the defendant erected buildings on his city lot so that their roofs collected waters in gutters and discharged the same in a body upon plaintiff's adjoining premises. It was held the defendant had no right to thus collect surface-water on his own premises and discharge it upon the land of another. Respondent does not contend it can collect water on its right of way by a ditch or other means, and discharge it on appellant's premises; nor does it contend it may lawfully create an artificial pool or collection of water upon its premises and precipitate the same upon its land and discharged the same in a large volume or upon the land of another. It has not collected the water by a rapid current upon appellant's land. It has raised its own premises so as to dike against and prevent the flow of surface water thereon. It has protected itself and prevented the invasion of its premises by the flood water of the stream. If thereby the water, which we hold to be surface water, is turned back and prevented from flowing over its land to appellant's injury, the case is one of *damnum absque injuria*. The surface water now meets the embankment and proceeds with the natural course of the stream. In other words, it is temporarily returned to the stream, and all the respondent has done is simply to protect its property from the overflow water which would otherwise leave the natural channel of the stream. The doctrine announced in *Cass v. Dicks* is not inconsistent with the later case of *Noyes v. Cosselman, supra,* but is approved therein, although distinguished as not applicable to the particular facts of that case. On the authority of *Cass v. Dicks*, we therefore hold the water of which

appellant complains is surface water, an outlaw and common enemy against which respondent is entitled to protect itself, by an embankment or otherwise, and against which the appellant must also protect himself if he desires to avoid injury.

Appellant further contends that, even though the water causing this damage be held surface water, the respondent is nevertheless liable for such damage, because it has collected and diverted such water from its usual course, and discharged it upon appellant's land in a quantity greater than, and in a manner different from, its natural flow. This contention cannot be sustained. Respondent has not collected the water on its right of way and thereafter discharged it upon appellant's premises. It was entitled to protect itself against the water escaping from the banks of the river, and could only do so by some method which would prevent it from flowing upon and over its lands, and this it did. When prevented from flowing upon respondent's land by the embankment, the water necessarily continued its flow along the general course of the river until it reached a point where, for want of obstruction, it was discharged upon appellant's land. Respondent has done nothing further than to exercise its common law right of protection against surface water. It is to be presumed that appellant may do the same. The allegations of his amended complaint do not show that he has done so, and any injury he may have suffered is regarded under the law of this state as *damnum absque injuria.*

The judgment is affirmed.

Mount, Morris, Gose, Ellis, and Parker, JJ., concur.