[No. 38906. Department Two. June 1, 1967.]

MARSHLAND FLOOD CONTROL DISTRICT OF SNOHOMISH COUNTY, *Respondent,* v. GREAT NORTHERN RAILWAY COMPANY, *Petitioner.**

*Reported in 428 P.2d 531.

R. *Paul Tjossem* and *Woodrow L. Taylor*, for petitioner.

*Bell, Ingram & Smith, Newell Smith, Miles & Level,* and *Edward E. Level,* for respondent.

WEAVER, J.—This is an action of condemnation by the Marshland Flood Control District of Snohomish County, a municipal corporation, against the Great Northern Railway Company. The district seeks an order of public use and necessity for (1) an easement to tie its dikes into both sides of the railroad's embankment at the west end of Great Northern Bridge No. 1775, which spans the Snohomish River in Snohomish County; and (2) a judicial determination of the district's liability, if any, for damages to the railroad's bridge caused by a greater velocity of the water, and by higher water in the Snohomish River resulting from a dike the district plans to install along the west bank of the river, upstream from the bridge.

The transcontinental main line of the railroad crosses the river at Snohomish, Washington. Generally, the river flows westerly. Upstream from the bridge, it bends from west to north; immediately downstream from the bridge, it bends from north to west. The bridge, constructed pursuant to authority of the state of Washington and permission of the United States Army Corps of Engineers, is located between the two bends of the river.

The evidence, testimonial and photographic, supports the conclusion that the Snohomish River has periodically overflowed its banks during the past 70 years in the vicinity we are considering.

The elevation of the bridge has been sufficient to withstand all floods and water levels since its original construc-

tion in 1892. At flood stage, 4 to 5 feet of freeboard have usually been maintained between the lower chords of the bridge spans and high water.

On the *east* side of the river, the French Slough Flood Control District, with the assistance of the United States Department of Agriculture Soil Conservation Service, has constructed a dike that extends upstream from the embankment on the railroad's right of way.

On the *west* side of the river, upstream from the bridge, Batt and Hanson Sloughs originally absorbed the first high water. Some years ago, low dikes and floodgates were placed on the west bank at the entrance to the sloughs. At flood stage, the water spread to the west eventually to reach the regular channel of the river, downstream from the bridge, through floodways constructed by the Marshland District.

With the assistance of the United States Department of Agriculture Soil Conservation Service, it is the intention of the Marshland District to construct a dike on the west bank of the regular channel of the river. The dike is to extend upstream from the railroad's embankment at the west end of the bridge. The proposed dike will be the same height as the French Slough dike on the east side of the river. The trial court found

> that it is the endeavor of the District by the construction of this dike to contain floods from 48,000 cubic feet per second to 65,000 cubic feet per second; and that at such height floods of over 65,000 cubic feet per second will overtop the dike, and that at the 65,000 cubic feet per second flow as above stated the water will reach the bottom structural chords of the Great Nothern Railway Company's railroad bridge No. 1775.

It is not necessary, at this stage of the litigation, to detail the evidence produced by the engineers and hydrologist, nor to discuss the excellent photographs, engineering plans, and the topographical scale model of the area involved; it is sufficient to state that the record amply supports the finding of fact

> that by reason of the construction and maintenance of

the dikes proposed both on and off the railroad's property, Bridge No. 1775 *would be damaged.* (Italics ours.)

It is beyond dispute that the district has the statutory authority to condemn that portion of the railroad's 100-foot right of way necessary to tie the district's dikes into both sides of the embankment at the west end of the bridge. The district must, of course, compensate the railroad for this invasion of its property. That portion of the order of public use and necessity granting the district the right to anchor its dikes to the railroad embankment is affirmed, subject to payment of compensation therefor, the amount to be determined as provided by law.

The crux of our problem stems from the fact that the court found, and the evidence supports the conclusion, that the railroad's property interest in its bridge and the approaches thereto will be damaged by reason of the higher and swifter water of the Snohomish River resulting from the installation of the district's dikes along the west bank of the regular channel of the river.

 The railroad challenges the trial court's conclusion on the second facet[1] of this action of condemnation—that the district is not liable to the railroad for damages and costs arising from the necessity of keeping its railroad bridge and its approaches operational. At this point we note, however, that under both the eminent domain statutes (RCW 86.05.340; RCW 86.05.390) and the constitutional provision (Const. art. 1 § 16 (amendment 9)) we have repeatedly held that liability for damages is not limited to the property appropriated, but also includes damage to the remainder of the property not actually taken or appropriated. *Seattle & Montana R.R. v. Roeder,* 30 Wash. 244, 70 Pac. 498 (1902).

The problem brings into sharp focus two rules of law: the one—the right of a landowner to protect his property from surface water; the other—the right of a riparian

---

[1] We note in the record a stipulation of counsel that upon review by this court "that all matters heard, considered and determined in the lower court be considered and reviewed by the Supreme Court."

owner not to have his property taken or damaged by the interference with the natural flow of a stream by an upstream owner without compensation.

■ This jurisdiction has adopted the rule that surface water, caused by the falling of rain or the melting of snow, and which has escaped and become detached from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself; if damages thereby result to another, it is damnum absque injuria. *Cass v. Dicks*, 14 Wash. 75, 44 Pac. 113 (1896).

The cases usually cited in support of the proposition that water overflowing from a river in flood times is surface water are: *Cass v. Dicks, supra*; *Harvey v. Northern Pac. Ry.*, 63 Wash. 669, 116 Pac. 464 (1911); *Morton v. Hines*, 112 Wash. 612, 192 Pac. 1016 (1920); and *DeRuwe v. Morrison*, 28 Wn.2d 797, 184 P.2d 273 (1947).

In *Sund v. Keating*, 43 Wn.2d 36, 259 P.2d 1113 (1953), this court pointed out that:

Because the flood waters involved in the *Cass* case were not confined within the channel of a natural watercourse, we assumed, without discussion, that the case was governed by the law of surface waters. In the next case involving this point, *Harvey v. Northern Pac. R. Co., supra*, we noted that the flood waters had already escaped over the banks of the stream, and, on the authority of the *Cass* case, we treated them as surface waters, subject to the common enemy rule. In the *Morton* and *DeRuwe* cases, *supra*, we restated the rule—that waters *escaping* from the banks of a stream become surface waters and are subject to the laws governing such waters.

The court pointed out, however, that:

In none of these cases have we decided whether flood *waters, still remaining within the confines of the flood channel of a stream,* are an integral part of the watercourse and governed by the laws relating to riparian rights, or whether they are surface waters. (Italics ours.)

The question is now squarely before us, for the water which will be thrown against the railroad's bridge and will damage it is within the banks of the Snohomish River. The damaging water is a part of the stream which will course

within the confines of the river's channel after the west dike is built. It is not diffused or vagrant surface water; it is governed by the laws relating to riparian rights.

■ Our decision is governed by the rationale of the court's exhaustive opinion in *Conger v. Pierce Cy.*, 116 Wash. 27, 198 Pac. 377 (1921). Pierce County, under express legislative authority, improved the Puyallup River for the purpose of preventing it from overflowing its banks and damaging public property, an objective similar to the district's objective in the instant case.

As a result of the improvements and the manner in which they were made, the plaintiff's property was eroded and washed away. It makes no difference whether the damage was caused by the natural flow of the stream or by flood water for the damage was the result of the method used to prevent the Puyallup River from overflowing its banks and damaging public property.

The court stated the problem thus:

whether a county which straightens and otherwise improves a navigable stream *for the purpose of preventing it from overflowing its banks* and thereby doing damage to the public property, where such improvements are made by virtue of express authority of the legislature, is liable to a landowner if, because of such improvements, and the manner in which they are made, his property is eroded and washed away. (Italics ours.)

The court reversed a judgment of dismissal on the ground that the state constitution (Const. art. 1, § 16 (amendment 9)) prohibited the damaging of private property for public use without compensation, saying:

The parties to the action have elaborately discussed the law of outlaw, or surface, waters. In our opinion, those questions are not in this case, and to undertake to discuss them would be to create confusion in a question already sufficiently difficult. The appellant is complaining only of the action of those portions of the waters which were within the bed of the stream. It is not complaining of any overflowed, outlaw or surface waters. *Certainly, so long as the waters are confined to the bed and banks of the stream they cannot be outlaw waters.* (Italics ours.)

The county's improvements kept the water of the Puyallup River within the bed of the stream and prevented flooding. In doing so, it damaged plaintiff's property for which damage the county was held liable. The district's dike will keep the water of the Snohomish River within the bed of the stream and prevent flooding. The result is damage to the railroad's embankment and bridge.

*Conger, supra,* is a complete answer to the district's argument that it is acting under the police power.

That portion of the order of public use and necessity granting the district the right to anchor its dikes to the railroad embankment upon its right of way is affirmed.

That portion of said order reading

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner [District] is not liable to the Respondent [Railroad] for any damages to the Respondent's [Railroad's] railroad bridge No. 1775, and its approaches, by virtue of the construction of the dikes in the manner shown . . . .

is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

The railroad shall recover its costs.

It is so ordered.

FINLEY, C. J., DONWORTH and ROSELLINI, JJ., and LANGSDORF, J. Pro Tem., concur.

---

August 14, 1967. Petition for rehearing denied.