67 P.3d 500 (2003)
116 Wash.App. 625
Evelyne GRUNDY, Appellant,
v.
The BRACK FAMILY TRUST, Calvin Brack and Joyce M. Brack, Trustees, Respondents,
Thurston County, a municipal Corporation, and political subdivision of the State of Washington, Defendant.
No. 26347-5-II.
Court of Appeals of Washington, Division 2.
March 18, 2003.
Publication Ordered April 9, 2003.
*501 Barnett N. Kalikow, Kalikow & Gusa, PLLC, Olympia, WA, for Appellant.
Matthew Bryan Edwards, Owens Davies, PS, Olympia, WA, for Respondents.
QUINN-BRINTNALL, A.C.J.
Evelyne Grundy's neighbors, the Bracks, raised their existing seawall by 16 to 18 inches, which made their wall four inches higher than hers. Grundy claims Thurston County improperly exempted this project from the permitting process and thereby created a public nuisance, and she claims the raised seawall leaves her property vulnerable to flooding, creating a private nuisance. Grundy brought an action seeking declaratory and injunctive relief, but the trial court dismissed all claims against the Bracks on summary judgment, finding the case time barred under the Land Use Petition Act (LUPA). We agree and affirm.

FACTS
The Bracks, through the Brack Family Trust, own an undeveloped parcel on Johnson Point in Thurston County. Evelyne Grundy lives next door. In October of 1998, the Bracks applied for a permit to raise the seawall on their property to "roughly match the height" of the seawalls of their neighbors to the east and southwest. Clerk's Papers (CP) at 15. They also submitted a hydraulics permit to the Department of Fish and Wildlife. The County determined that the project qualified for an exemption from the permitting requirements for substantial development on the shoreline and issued a permit to allow the Bracks to raise their seawall.[1]
*502 The County granted the building permit without notice to the neighbors. Grundy became aware of the raising of the seawall around March of 1999, when it was almost completed, and learned about the exemption about five months later (August of 1999).[2] She filed this nuisance action in November of 1999, approximately one year after the County made its decision and eight months after the Bracks completed the seawall improvements. Grundy did not file an appeal of the County's decision under LUPA.[3]
PROCEDURAL HISTORY
Grundy filed a nuisance action in November of 1999, alleging three causes of action. She sought a declaratory judgment that the permit to raise the seawall was null and void, orders of abatement, and attorney fees. Although the summary judgment order dismissed all three actions, Grundy only appeals that portion of the action concerning the validity of the permit authorizing the seawall.[4]
The trial court granted the Bracks' motion for summary judgment in part. As a result, it dismissed Grundy's first two causes of action, noting that the County waived any objection to Grundy's amending her complaint to allege new causes of action against it. In so ruling, the trial court agreed with the Bracks' argument that LUPA was Grundy's proper avenue for relief. At the hearing on summary judgment the court stated:
The court will hold the following: The failure to challenge the decision of a granted permit under LUPA, under the time stated of the seawall, constitutes what I consider summary judgment and order; I specifically reject the fact the bulkhead was built pursuant to an invalid permit; and I grant summary judgment for the Bracks to continue [to] have the seawall. However, I deny summary judgment to Thurston County ... as to whether or not the permit is illegal. It's a question of fact.[[5]]
Report of Proceedings (RP) at 33.
Grundy appealed. Since oral argument in this case, our Supreme Court has issued two opinions addressing standing under LUPA.[6] We requested and received additional briefing after the first of these was issued. We address two issues: First, was Grundy required to pursue her public nuisance claims *503 in an appeal under LUPA? And, second, does the common enemy doctrine provide a defense to Grundy's private nuisance claim?

ANALYSIS
This court engages in the same inquiry as the trial court when reviewing an order for summary judgment: review is de novo. Failor's Pharmacy v. Dep't of Soc. & Health Servs., 125 Wash.2d 488, 493, 886 P.2d 147 (1994). This court will affirm an order of summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Failor's Pharmacy, 125 Wash.2d at 493, 886 P.2d 147.
LAND USE PETITION ACT APPEAL
The County determined that the Bracks' project qualified for an exemption from the shoreline substantial development permitting process normally required under RCW 90.58.140 for "substantial development" on the shoreline. RCW 90.58.140(2). Projects that meet the precise terms of one or more of the listed exemptions under WAC 173-27-040 may be granted exemption from the substantial development permit process.[7]
The Bracks claim that Grundy should have appealed the County's decision under LUPA, and, because she failed to do so, her claims are now time barred under the act's 21-day statute of limitations. The trial court agreed.
Grundy bases her argument that she was not required to bring her claims in a LUPA appeal on her assertion that LUPA can afford her no relief because the project is already complete. She argues that she lacked standing under LUPA and lacked notice of the land use decision; therefore, dismissing her case because she did not challenge the decision under LUPA violates her right to due process. As a result she asserts that she should be allowed to seek injunctive relief from the wall itself. We disagree.
Grundy argues that she lacks standing under LUPA. But the applicant, landowner, and any person "aggrieved or adversely affected by the land use decision" has standing to challenge a decision under LUPA. RCW 36.70C.060(1)-(2). A person is aggrieved or adversely affected only when all of the following conditions are present:
(a) The land use decision has prejudiced or is likely to prejudice that person;
(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and
(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.
RCW 36.70C.060(2).
A recent Supreme Court case addressed the application of LUPA to ministerial land use decisions, such as the one at issue here. *504 See Chelan County v. Nykreim, 146 Wash.2d 904, 52 P.3d 1 (2002).
In Nykreim, the "aggrieved party" was Chelan County, whose own planning director approved a boundary line adjustment (BLA) that was contrary to law (in that it created three lots out of one, instead of simply adjusting the boundary lines of existing lots). 146 Wash.2d at 911-12, 52 P.3d 1. Fourteen months after approving the BLA, the County discovered the mistake and challenged the decision in superior court; neighboring property owners intervened. Nykreim, 146 Wash.2d at 914, 52 P.3d 1. As here, the property owners who obtained the BLA approval claimed Chelan County should have challenged the BLA under LUPA. Nykreim, 146 Wash.2d at 917, 52 P.3d 1. The trial court and Division Three of this court viewed the decision to approve the BLA as a ministerial decision, and the appeals court reasoned that LUPA does not apply to ministerial decisions. Nykreim, 146 Wash.2d at 915-16, 918, 52 P.3d 1.
Our Supreme Court disagreed and reversed, explaining that applying a distinction between ministerial and quasi-judicial decisions "is not consistent with the intent and express language of LUPA." Nykreim, 146 Wash.2d at 927, 52 P.3d 1. Under a plain reading of the statute, LUPA provisions apply equally to ministerial and quasi-judicial decisions, if they are "land use decisions," defined as
a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used....
Nykreim, 146 Wash.2d at 927, 52 P.3d 1 (quoting RCW 36.70C.020(1)).
Here, Grundy bases her public nuisance claim[8] on her allegation that raising the height of an existing seawall without a substantial development permit violates the Shorelines Management Act (SMA). According to Grundy, if the exemption was unlawful, it conferred no rights. Indeed, pre-LUPA case law holds that a void building permit confers no rights. See Steele v. Queen City Broad. Co., 54 Wash.2d 402, 408, 341 P.2d 499 (1959); Nolan v. Blackwell, 123 Wash. 504, 506, 212 P. 1048 (1923) But, as the Nykreim opinion points out, these cases predate LUPA. Post-LUPA case law holds that when the allegedly void action is a land use decision, it must be challenged under LUPA or it will be deemed valid. Nykreim, 146 Wash.2d at 925, 52 P.3d 1 (quoting Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 180-82, 4 P.3d 123 (2000)).
Grundy's public nuisance argument hinges solely on her assumption that the exemption was unlawful. But under Nykreim the exemption is necessarily valid because Grundy failed to challenge it under LUPA. Thus there is no basis for Grundy's public nuisance claim.
Grundy argues that she can bring her public nuisance claim as an original action under chapter 7.48 RCW. But LUPA is the exclusive avenue for appealing a land use decision. Nykreim, 146 Wash.2d at 917, 52 P.3d 1 (citing RCW 36.70C.030(1)). Even assuming Grundy lacked standing under LUPA that would not mean that she could challenge the decision in another forum. One who lacks standing under LUPA cannot appeal a land use decision at all.
DUE PROCESS
Grundy next asserts that the trial court's decision violates her right to due process because she had no notice or opportunity to be heard in the shorelines exemption process. *505 We disagree. We do not hold today that Grundy has no avenue of relief. We simply hold that Grundy cannot base her public nuisance claim on the County's alleged improper granting of an exemption because the only way to challenge the propriety of that exemption was under LUPA, which Grundy failed to do.[9]
PRIVATE NUISANCE: COMMON ENEMY DOCTRINE
Grundy also alleges that the Bracks' wall is a private nuisance on the theory that her property has been damaged, and will continue to be damaged as long as the Bracks' seawall is higher than her own. Every nuisance that is not a public nuisance (as defined in RCW 7.48.130) is a private nuisance. RCW 7.48.150. In defense, the Bracks assert the common enemy doctrine.
The first Washington case to apply the common enemy doctrine specifically mentioned seawalls, explaining
[i]f a land owner whose lands are exposed to inroads of the sea, or to inundations from adjacent creeks or rivers, erects sea-walls or dams, for the protection of his land, and by so doing causes the tide, the current, or the waves to flow against the land of his neighbor, and wash it away, or cover it with water, the landowner so causing an injury to his neighbor is not responsible in damages to the latter, as he has done no wrong, having acted in self-defense and having a right to protect his land and his crops from inundation.
Cass v. Dicks, 14 Wash. 75, 79, 44 P. 113 (1896), quoting (WEEKS, DAMNUM ABSQUE INJURIA, pp. 3 and 4) (emphasis added).
The "common enemy" element of the doctrine stems from the idea that surface water "is regarded as an outlaw and a common enemy against which anyone may defend himself; if damages thereby result to another, it is damnum absque injuria." Marshland Flood Control Dist. of Snohomish County v. Great N. Ry. Co., 71 Wash.2d 365, 369, 428 P.2d 531 (1967). Surface waters are ordinarily those "vagrant or diffused waters produced by rain, melting snow, or springs." King County v. Boeing Co., 62 Wash.2d 545, 550, 384 P.2d 122 (1963). Surface water is defined as water on the surface of the ground, "the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well defined and substantial existence." Miller v. E. Ry. & Lumber Co., 84 Wash. 31, 35, 146 P. 171 (1915) (quoting 1 KINNEY, IRRIGATION & WATER RIGHTS, § 318). Surface waters are outlaw or common enemy waters, against which every proprietor of land may defend himself, even to the consequent injury of others. Boeing Co., 62 Wash.2d at 550, 384 P.2d 122 (citing Cass, 14 Wash. 75, 44 P. 113). Surface waters that may "become vagrant and subject to outlawry are waters accumulating and spreading in consequence of heavy rains and storms." Miller, 84 Wash. at 34-35, 146 P. 171 (citing Cass, 14 Wash. 75, 44 P. 113).
No case since Cass has expressly mentioned seawalls and ocean surge water. A recent case from our Supreme Court, however, discussed the continuing viability of the common enemy doctrine:
For over a century, Washington courts have adhered to the common enemy doctrine. See DiBlasi v. City of Seattle, 136 Wash.2d 865, 875, 969 P.2d 10 (1998); Cass v. Dicks, 14 Wash. 75, 78, 44 P. 113 (1896). This principle "provides that surface water is `an outlaw and a common enemy against which anyone may defend himself, even *506 though by so doing injury may result to others.'" DiBlasi, 136 Wash.2d at 875, 969 P.2d 10 (quoting Cass, 14 Wash. at 78, 44 P. 113). If a landowner "in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is damnum absque injuria [injury without redress]." Cass, 14 Wash. at 78, 44 P. 113.
Halverson v. Skagit County, 139 Wash.2d 1, 14-15, 983 P.2d 643 (1999).
Grundy contends that "[t]he Pacific Ocean does not become rain- or snow-swollen from localized storms, its damage is caused by currents, tides and wind and waves; thus the rule has no application." Br. of Appellant at 23. But as Halverson explains, it is the nomadic character of the water as it moves over the surface of the land, not the character of its sourcepond, lake, river, stream, slough, etc.that controls:
The chief characteristic of surface water is its inability to maintain its identity and existence as a body of water. It is thus distinguished from water flowing in its natural course or collected into and forming a definite and identifiable body....
Halverson, 139 Wash.2d at 15, 983 P.2d 643.
Consistent with the suggestion of our Supreme Court more than 100 years ago, we hold that the common enemy doctrine applies to sea water. The Bracks are entitled to prevent damage to their property from the vagrant surface water once confined in Puget Sound, even when a neighbor may be injured by their defense. See Halverson, 139 Wash.2d at 16, 983 P.2d 643. The trial court did not err by dismissing Grundy's private nuisance action.
ATTORNEY FEES ON APPEAL
The Bracks seek attorney fees on appeal, citing RCW 4.84.340.[10] The rule regarding attorney fees on appeal requires more than a bald request for such fees. RAP 18.1(b); Phillips Bldg. Co., Inc. v. An, 81 Wash.App. 696, 705, 915 P.2d 1146 (1996). The Bracks also claim the appeal is frivolous. The appeal is not frivolous under RAP 18.9(a). We award no fees.
We concur: MORGAN and BRIDGEWATER, JJ.
NOTES
[1] The Bracks claim the County exempted the permit because it determined the seawall was a "normal protective bulkhead common to a single family residence" under WAC 173-27-040(2)(c). Clerk's Papers (CP) at 15. According to the County, however, it granted the exemption under section 4(c) of the Shoreline Master Program for the Thurston Region, which allows protective structures when the request is for "the repair and [re]placement of an existing protection device." CP at 33. Grundy claims neither section applies, because she argues the Bracks' dwelling is located on a separate parcel (therefore the seawall does not protect a dwelling) and that raising the wall by 16-18 inches qualifies as neither repair nor replacement.
[2] Grundy explains that she did not discover the work on the seawall right away because her view is obstructed on the part of the Bracks' property on which work first began.
[3] The Bracks have also been pursuing permits to build, grade, and landscape the property; at the time of the summary judgment hearing it appeared that a land use hearing was scheduled to address the grading/landscaping permits required to place fill behind the bulkhead. It is not clear from the record or the parties' briefs whether or when this hearing is scheduled.
[4] Grundy's second cause of action involved a heap of dirt excavated in the early stages of construction of a house and garage on the Bracks' property. Grundy and several neighbors claimed the dirt was contaminated by chemicals from a gas tank that a previous owner maintained on the property, among other complaints. It is not clear from the record or briefs why Grundy dropped this issue on appeal. Grundy's third cause of action involved a gate placed across the road on the Bracks' property, which she claimed was across a prescriptive easement established by the neighbors. The Bracks removed the gate, and Grundy voluntarily nonsuited that cause of action. The dismissal of all claims against the Bracks made the case ripe for appeal; the claims against the County were not dismissed. See note 5.
[5] Thurston County filed a brief in this appeal, mainly to clarify Grundy's presentation of facts, but it is not officially a party to the appeal. At oral argument, Grundy's counsel explained that she does not seek anything but the abatement of the nuisance, namely, the removal of the heightened portion of the sea wall.
[6] See Chelan County v. Nykreim, 146 Wash.2d 904, 52 P.3d 1 (2002), and Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wash.2d 440, 54 P.3d 1194 (2002).
[7] WAC 173-27-040(2)(b) and (c) read in pertinent part as follows (emphasis added):

(2) The following developments shall not require substantial development permits:
....
(b) Normal maintenance or repair of existing structures or developments, including damage by accident, fire or elements. "Normal maintenance" includes those usual acts to prevent a decline, lapse, or cessation from a lawfully established condition. "Normal repair" means to restore a development to a state comparable to its original condition, including but not limited to its size, shape, configuration, location and external appearance, within a reasonable period after decay or partial destruction, except where repair causes substantial adverse effects to shoreline resource or environment....
(c) Construction of the normal protective bulkhead common to single-family residences. A "normal protective" bulkhead includes those structural and nonstructural developments installed at or near, and parallel to, the ordinary high water mark for the sole purpose of protecting an existing single-family residence and appurtenant structures from loss or damage by erosion. A normal protective bulkhead is not exempt if constructed for the purpose of creating dry land. When a vertical or near vertical wall is being constructed or reconstructed, not more than one cubic yard of fill per one foot of wall may be used as backfill....
[8] A public nuisance is one that affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal. RCW 7.48.130. A nuisance consists of

unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.
RCW 7.48.120.
[9] Grundy cites Phillips v. King County, 87 Wash.App. 468, 943 P.2d 306 (1997), aff'd, 136 Wash.2d 946, 968 P.2d 871 (1998), to support her argument that LUPA is not the correct forum to address her claims. Grundy argues that this case illustrates "the absurdity of requiring a LUPA petition after the construction is in place[.]" Br. of Appellant at 19. But in so arguing, Grundy misunderstands the nature of her public nuisance claim.

Nothing that is done or maintained under the express authority of a statute can be deemed a nuisance. RCW 7.48.160; Miotke v. City of Spokane, 101 Wash.2d 307, 331, 678 P.2d 803 (1984). Grundy bases her public nuisance claim solely on the alleged unlawfulness of the permit exemption. The injury in this nuisance claim is this alleged unlawfulness of the exemption. Unlike the flooding that damaged the landowner in Phillips (and the flooding that Grundy claims damaged and threatens to further damage her property), a LUPA appeal was the exclusive forum in which to address that injury.
[10] Although the Bracks' materials cite RCW 4.84.340, it is clear they intend to rely on RCW 4.84.350 and we have assumed as much for purposes of this request.