ST. LOUIS SOUTHWESTERN RY. CO. v. MILLER LEVEE DIST. NO. 2 et al.

(District Court, W. D. Arkansas, Texarkana Division.   July 10, 1912.)

1. LEVEES (§ 5*)—LEVEE DISTRICT—STATUS.
   A levee district created by statute, with authority to construct levees along the bank of the Red river and to condemn land for that purpose, is an agency of the state.
   [Ed. Note.—For other cases, see Levees, Cent. Dig. §§ 14, 15; Dec. Dig. § 5.*]

2. EMINENT DOMAIN (§ 2*)—LEVEES—CONSTRUCTION—RAILROAD BRIDGE—CHANGE.
   A levee district having been expressly authorized by Act Ark. March 3, 1911 (Sp. & Priv. Laws 1911, p. 89), to construct certain levees along the banks of Red river, in M. county, the fact that, on account of the construction of such levees, the plaintiff railroad company, which had previously, at great expense, built a bridge across the river, may be compelled to change the same, at its own expense, in order to raise it above the new high-water mark resulting from the confinement of the waters by the levees. does not constitute a taking, appropriating, or damaging of the railroad company's property without compensation, in violation of the Constitution of the United States or of the state of Arkansas.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2;* Constitutional Law, Cent. Dig. § 888.]

3. COMMERCE (§ 48*)—INTERSTATE COMMERCE—INTERFERENCE—OBSTRUCTION OF MAILS.
   The construction of a levee across a railroad's right of way under statutory authority, which could be constructed without interfering with the movements of complainant's trains, does not constitute an illegal interference with complainant as an interstate carrier of freight, passengers, and mail.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 36–44, 46; Dec. Dig. § 48.*]

4. EMINENT DOMAIN (§ 47*)—RAILROADS—CONDEMNATION.
   It is within the power of the state to authorize the condemnation of a railroad right of way for the construction of a levee across the same.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig § 47.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. EMINENT 'DOMAIN (§ 266*)—REMEDIES OF OWNERS OF PROPERTY—INADE-'
QUATE DAMAGES.

Where a part of a right of way of a railroad company was taken
for the construction of a levee, an objection that the amount allowed
for the portion of 'the right of way so taken was inadequate could not
be rectified in a, suit in a federal court to restrain the construction of·
· · the levee above a certain height and across the right of way.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 694–
696, 702, 703, 705; Dec. Dig. § 266.*]

In Equity. Suit by the St. Louis Southwestern Railway Company
against Miller Levee District No. 2 and others. On demurrer to com-
plainant's amended bill. Sustained.

Gaughan & Sifford, of Camden, Ark., for plaintiff.

Henry Moore, Jr., of Texarkana, Ark., for defendants.

YOUMANS, District Judge. This is a suit in equity by the St.
Louis Southwestern Railway Company, a Missouri corporation, against
the Miller Levee District No. 2 and its officers, to restrain them from
constructing a levee in Miller county, Ark., above a certain height, and
across its right of way. The allegations of the amended bill are as fol-
lows:·

."That the defendant board of directors of Miller Levee District No. 2 is
undertaking to build a levee of solid earth along the south and west side of
Red river, beginning at a point in Miller county, Ark., where the state line
between the states of Arkansas and Texas intersect the south bank of Red
river, at or near Index, in the county of Miller and state of Arkansas, down
along the southern and western bank of Red river to a point near the town
of Garland City on the line of·the·plaintiff's road, and at or near said point
to connect with the roadbed and cross the right of way of the plaintiff's
railroad, and thence on southerly and easterly. That the purpose in view
on the part of said board of directors of Miller Levee District in the con-
struction of said levee is to confine the flood waters which are now and
have always heretofore been accustomed to flow down the Red river and the
lowlands adjoining its channel into the channel of said river north and
easterly of said line.of levee, and to prevent any of the waters accustomed
heretofore to flow down said river and the lowlands adjoining it, from com-
ing upon any of the lands embraced in said levee district, being those lands
lying south and west.of said levee and between it and what is known as,
the foothills or highlands of Miller county adjoining said Red river bottom.

"The plaintiff alleges that said board of directors, with the purposes and
intent aforesaid, has caused surveys to be made and the location of said
levee to be fixed by engineers, and plans and specifications thereof to be
drawn, and' has or is about to arrange for the building of said 'levee by
contract with a contractor or contractors, and is now engaged in negotiating
for the sale of bonds in the sum of $300,000, or some like amount, in order
to 'raise funds for the purpose of constructing said levee.'

"The plaintiff further alleges: That in the spring of 1908 an overflow
occurred in the Red river, the height of which was duly ascertained and
marked so that it is now well·known. Said overflow·was regarded, and is
in fact, a fair example of the floods which may reasonably be expected to
occur in said river. That the levee proposed to be constructed by the de-
fendant·district will·be about five feet higher than the high water of the
year 1908, and therefore higher than any known high water in said river.

"The plaintiff further alleges that a levee district has heretofore been·
created· by·a ·special act of the Legislature of the state of Arkansas on the
opposite side of Red river on what is known as the Lafayette county

side, and a levee constructed of solid earth on an average of two feet higher than the high water of said river in the year 1908 above referred to. And further, the plaintiff alleges that it is advised, and alleges as true, that the said levee district on the Lafayette county side intends, and will in the near future, increase the height of said levee so that it will be of at least as great, if not greater height, than the levee proposed to be constructed by said defendant board of directors.

"The plaintiff further alleges that between said two embankments or levees not more than two-fifths of the flood water of Red river has heretofore been accustomed to pass, and that the effect of confining all of said flood water, the same being river water and accustomed to flow down the natural channel and natural drainage tributary thereto, in Red river, will be to raise the water in the channel of said river to such a height as will overflow said levees in case of a flood similar or like the one of 1908, which said floods may reasonably be expected.

"The plaintiff further alleges: That more than 20 years ago, by special act of Congress, and under the authority and approval of the Secretary of War, it constructed a railroad bridge across said river near Garland City, and built a roadbed across the lowlands adjoining said river, leaving sufficient openings or trestle work to allow all flood water from said river which might reasonably be anticipated to pass free from obstruction through the same. That within the past few years, at very great expense, it has rebuilt its said bridge across said river, placing a new span therein. That it has increased the height of its roadbed and at a very great expense caused the same to be ballasted with gravel; and also, at great expense, it has rebuilt its trestle work and bridge work through Red river bottom. That its plans for the recent construction of its said bridge across said river were submitted to and approved by the Secretary of War for the United States, and the height of said bridge as rebuilt was approved by said Secretary of War. That said Red river is a navigable stream, and that plaintiff is a quasi public corporation, engaged in the business of carrying large numbers of passengers and large quantities of freight in interstate commerce, as well as carrying the United States mails. That the top of its pivot pier in its bridge across Red river is less than six inches above the high waters of 1908, and the bottom cord of the draw of said bridge, which is the lowest part of the steel work of the bridge, is not more than high enough above that high-water mark to allow for the passage of drift. That by the construction of said levee the water of Red river will be raised during ordinary overflow more than two feet above the high-water mark of 1908: and should the Lafayette county levee be added to in height, as is now proposed by the Lafayette Levee District No. 1, then the water in Red river at said bridge will be raised at least five feet higher than the high-water mark of 1908, with the result that the water will be about five feet above the present height of the pivot pier and will cause the logs and driftwood which always float down said river during overflows to lodge against the draw span of said bridge, and the pressure from said accumulated drift would in all probability cause said bridge to give away, thereby greatly endangering the lives of the employés of the plaintiff company, and the lives of great numbers of passengers carried on its said line of road, as well as interfering with and retarding the carriage of the United States mail. And further, the loss of said bridge would greatly hinder and retard the freight traffic of the patrons of said road. That the damages to the plaintiff and the general public therefrom is incalculable and far in excess of any amount that the defendant levee district would be able to pay. Further, the plaintiff says that said damages in many instances would be remote and difficult to ascertain.

"The plaintiff further alleges that, in order to provide against said certain danger, it would be necessary for the plaintiff company to rebuild said bridge across Red river, and increase the height thereof, and also to increase the height of its approaches, and that the expense of so doing would be largely in excess of the sum of $150,000; a sum which the plaintiff alleges the defendant levee district is unable to pay in view of the limitation in the

197 F.—52

act creating it upon the amount of taxes which it is authorized to levy and in view of the value of the lands embraced in said district.

"The plaintiff further states: That in the event said proposed levee should be constructed, and should the levee on the Lafayette county side be increased in height, so that the height of said two levees would be substantially the same, one or the other of said levees would necessarily in the time of high overflow give way; and that it would not be possible for the plaintiff to know which of said levees would give way, so that it would be necessary for it to provide, by additional openings on both the Miller county side and the Lafayette county side of the main channel of said river, to take care of the immense volume of water which would be discharged over and through the openings in the levee which should break and give way. That the expense necessary to provide for the additional openings required would be in excess of $100,000.

"Your petitioner states that the construction of said proposed levee will cause great and irreparable damage to it, should the levee on the Lafayette county side be built to an equal height, without benefit to the defendant district or to the lands which it is endeavoring to protect.

"The plaintiff further alleges: That the act creating said levee district does not prescribe the height to which the levee should be built nor the distance from the bank of the river where the levee should be constructed. That the defendant board of directors have located said levee so near the bank of said river and are intending to and will construct it of such height that it will be of no benefit to the lands which were intended to be protected.

"The premises considered, the plaintiff prays that the defendant board be restrained from constructing said proposed levee any greater height than the high water of 1908, and be restrained from constructing said levee so as to cross said defendant's road at the place of present location near Garland City, or so near said point as to damage plaintiff's bridge across Red river; and that said defendants, R. H. T. Mann, Ben G. Cox, and N. H. Williamson, as officers of said district, or their successors in office, or their agents or servants, or the agents or servants of said levee district, be restrained from taking any steps or doing any act whatever to that end.

"The plaintiff further alleges that the defendants are preparing to enter upon its right of way in the building and constructing of said levee, and it alleges, for the reasons hereinbefore set out, that the result of the construction of said embankment on its right of way will be to bring upon this plaintiff irreparable injury, and will take from this plaintiff its dominion over its said right of way, will be an obstruction thereon, and prevent it from having in the operation of its trains a clear and proper view of its right of way.

"Plaintiff alleges: That since the filing of the petition herein the defendant board of directors have caused to be appraised the damages done to plaintiff by reason of the appropriation of its right of way by said levee district, and said appraisers have made an award of $14 as being the value of the actual land to be occupied by said levee, and have allowed nothing to plaintiff on account of damages which the building of said levee will cause it as a result of increasing the height of the ordinary overflows in Red river, and nothing on account of the great cost to plaintiff of increasing the height of its bridge and the height of its railroad track, and nothing on account of the increased trestle openings which the construction of said levee will necessarily cause the plaintiff to incur; said expenses being largely in excess of $200,000. That within 10 days after the filing of said award by the appraisers, hereinbefore referred to, your petitioner filed exceptions to the said appraisement and to each of the findings appearing in the award made by said appraisers. That the proceedings of the defendant board of directors in appointing appraisers to appraise the damages to your petitioner on account of the construction of the proposed levee on and across the right of way of your petitioner has been and is being had under Act No. 53 passed in the year 1905 by the Legislature of the state of Arkansas, which said act provides, among other things, that in the exercise of the right of eminent domain by the directors of any levee district authorized

to condemn land for their use in building levees damages shall be given to any landowner whose property is sought to be condemned on account of obstruction to natural drainage not exceeding the cost of artificial drainage.

"Your petitioner states: That the cost of artificial drainage sufficient to protect the bridge and railroad of defendant without the necessity of reconstructing said bridge and increasing the height of its railroad along the approaches to said bridge would be largely in excess of the sum of $200,000, and by reason of the property embraced in said levee district and the rate of taxation permitted under the terms of the act creating said levee district, could never be paid by said district, so that your petitioner is without other resource than that of injunction by the chancery court. That the damage to your petitioner herein sought to be averted is largely in excess of $3,000, and the matter herein involved is largely in amount in excess of $3,000.

"So, the plaintiff prays that the defendants, and each of them, their agents and servants, be restrained from constructing any embankment or levee upon, over, or across its right of way or any part thereof, from the western bank of Red river to the foothills in Miller county, Ark."

Defendants have demurred to the amended bill, and the demurrer has been submitted, on the single ground that the bill does not state a cause of action in equity against the defendants.

Miller Levee District No. 2 was created by an act of the General Assembly of Arkansas approved March 3, 1911 (Sp. & Priv. Acts 1911, p. 89). The first section of the act creates the district and fixes its boundaries. The boundary line begins at a point in Miller county, Ark., where the state line between the states of Arkansas and Texas intersects the south bank of Red river at or near Index, in Miller county, Ark. It runs thence along Red river, following its meanderings, to a point in Miller county south of Garland City where the bridge of plaintiff is located; thence west to the high ground or hills; thence, following the meanderings of the line at the foot of the hills, to the point where such line intersects the state line between Arkansas and Texas; thence north along said state line to the point of beginning. Section 2 of the act provides for a board of directors and officers. Section 3 of the act is as follows:

"Sec. 3. The said board of levee directors shall have the power, and it is hereby made their duty, to levee the south and west bank of Red river from the point of beginning, where the state line between the states of Arkansas and Texas intersects the south bank of Red river at or near Index, in the county of Miller, state of Arkansas, or at any other point as may be determined by the board of levee directors, and running in a general easterly direction until the line of the railway track of the St. Louis Iron Mountain & Southern Railroad is reached; thence, in a southerly direction to where the section line between sections seventeen (17) and twenty (20), township sixteen (16) south, range twenty-five (25) west, intersects the west bank of Red river; said levee to be built when in the discretion of the said board of directors it is most practicable and best suited to commence, locate and end the said levee so as to protect the property in the district above named, and to protect and maintain the same in such effective condition as honest, able, and energetic efforts on their part may obtain by building, rebuilding, repairing, or raising levees on the bank of Red river, or such other places as the board may select. They shall have power to employ all agents necessary to the execution of their duty. They shall determine the crown, height, slope and grade of the levee, and make all needful regulation, and do all acts in their opinion necessary to secure the levee district under their charge from overflows by the waters of Red river or its tributaries; and they shall have authority, if they consider it necessary or expedient to do so, to condemn any levy now built, or to be hereafter built in said district that

they may deem of benefit to the work herein contemplated, and take and use same for the benefit of the said levee district in the mode and manner provided by law for the condemnation of private property for public use, and the right of eminent domain is hereby expressly conferred upon the said district for the purpose of condemning any land for levee uses, or buildings, erecting and maintaining a levee through, over and across the land of any individual, firm, or corporation in said district. In assessing the damage arising from the condemnation of the levee or land of any person, or corporation for the uses or purposes set forth in this bill, the accruing benefit to his or its land or lands that will be protected by the levee when built must be taken into consideration."

The bill seeks to enjoin: First, the construction of a levee to a greater height than the high water of 1908; second, the construction of "any embankment or levee upon, over or across" the railway company's right of way.

The bill alleges in substance that the construction of a levee will compel the railway company to raise and reconstruct its bridge across Red river, and the approaches leading to the bridge, at an expense of $150,000, and that additional openings in its embankment will be rendered necessary, which will cost $100,000. The bill further alleges that the district, on account of the limitations on its taxing power, will not be able to pay the railway company the amount it will cost to make such changes.

There is no allegation that the levee district will obstruct any water course. It is alleged:

"That the purpose in view on the part of said board of directors of Miller Levee District in the construction of said levee is to confine the flood waters which are now and have always heretofore been accustomed to flow down the Red river and the lowlands adjoining its channel into the channel of said river north and easterly of said line of levee, and to prevent any of the waters accustomed heretofore to flow down said river and the lowlands adjoining it, from coming upon any of the lands embraced in said levee district, being those lands lying south and west of said levee and between it and what is known as the foothills or highlands of Miller county adjoining said Red river bottom."

[1] The levee district is an agency of the state. Caton v. Western Clay Drainage District, 87 Ark. 8, 112 S. W. 145; Little Rock v. Katzenstein, 52 Ark. 107, 12 S. W. 198; Sels v. Greene (C. C.) 88 Fed. 129.

The district is given the power to condemn land by sections 3 and 4 of the act. It has also the right of eminent domain under an act of the General Assembly of Arkansas, approved February 24, 1905, entitled "An act to provide a method for the exercise of the right of eminent domain for levee, drainage, and ditching districts." Acts Arkansas 1905, p. 143; City Realty Co. v. Robinson Contracting Co. (C. C.) 183 Fed. 176. It appears from the allegations in the amended bill that the board of directors has proceeded under the statute of 1905.

[2] The effect of the contention of the railway company is that having legally constructed its bridge and approaches under conditions then existing, at a height and in a manner warranted by the best engineering skill and foresight, it cannot now, by a change of conditions authorized and directed by the state, be put to the expense of raising and reconstructing its bridge and approaches. In other words, it hav-

ing some years ago at great expense adjusted itself to conditions as they then existed, those conditions must remain unchanged unless it is compensated for the expense which a contemplated change will necessitate. As additional grounds for an injunction, the railway company alleges that it is an interstate carrier of freight, passengers, and the United States mail, and that, as a result of the construction of the levee, its bridge will be rendered insecure and liable to be destroyed, thereby endangering the lives of its employés and passengers, and interfering with and retarding the carriage of the mail.

In the case of Harvey v. Northern Pacific Ry. Co., 63 Wash. 669, 116 Pac. 464, it was alleged that the plaintiff's lands were overflowed by reason of the construction of an embankment by the railway company. In its opinion in that case the Supreme Court of Washington, following the case of Cass v. Dicks, 14 Wash. 75, 44 Pac. 113, 53 Am. St. Rep. 859, said:

"It (the railway company) has raised its own premises so as to dike against and prevent the flow of surface water therein. It has protected itself and prevented the invasion of its premises by the flood water of the stream. If thereby the water, which we hold to be surface water, is turned back and prevented from flowing over its land to appellant's injury, the case is one of dammum absque injuria. The surface water now meets the embankment and proceeds with the natural course of the stream. In other words, it is temporarily returned to the stream, and all the respondent has done is simply to protect its property from the overflow water which would otherwise leave the natural channel of the stream."

In the case at bar the state has authorized. the levee to be constructed. It had the power to direct that work to be done. The object of the work is to reclaim and protect from overflow a large body of extremely fertile and productive land. The state cannot in violation of the Constitution of the United States authorize the taking of private property for use in constructing such levees without just compensation, nor can it, in violation of the Constitution of the state, authorize the taking, appropriating, or damaging of private property for such construction without just compensation therefor. So far as the Constitution of the United States is concerned, the question has been decided by the Supreme Court of the United States in the case of Chicago, B. & Q. Railway v. Drainage Commissioners, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175. Under an act of the Legislature of Illinois entitled "An act to provide for drainage for agricultural and sanitary purposes," etc. (Acts 1885, p. 77), railroad companies were required to build bridges over drains "so as not to interfere with the free flow of water through the drainage of the district." The drainage commissioners brought suit for mandamus to compel the railroad company to build a bridge across a drain. The railroad company demurred generally and specially on the ground that a judgment in favor of the commissioners would take its property for public use without compensation. Mr. Justice Harlan, speaking for the court, stated the case as follows:

"The concrete case arising upon the petition and the demurrer is this: A public corporation, charged by law with the duty of causing a large body of land, principally swamp and slough lands, to be drained and made capa-

ble of cultivation, has, under direct legislative authority, adopted a reasonable and suitable plan to accomplish that object. That plan requires the enlarging and deepening of the channel of a natural water course running through the district, which is the only natural outlet or way of drainage of the lands of the district—the best and only practicable mode by which the lands can be made tillable. But that plan cannot be carried out unless the timbers and stones in the creek—placed there by the railway company when it constructed the foundation for its present bridge—are removed. The timber and stone referred to cannot, however, be removed without destroying the foundations of the present bridge and rendering it necessary (if the railway company continued to operate its road, which we assume it intends to do) to construct another bridge with an opening underneath wide enough to permit a channel sufficient to carry off the water of the creek as increased in volume under the drainage system adopted by the commissioners.

"The contention of the railway company is that, as its present bridge was lawfully constructed, under its general corporate power to build, construct, operate, and maintain a railroad, in the county and township aforesaid, and as the depth and width of the channel under it were sufficient, at the time, to carry off the water of the creek as it then flowed, and now flows, the foundation of the bridge cannot be removed, and its use of the bridge disturbed, unless compensation be first made or secured to it in such amount as will be sufficient to meet the expense of removing the timbers and stones from the creek and of constructing a new bridge of such length and with such opening under it as the plan of the commissioners requires. The company insists that to require it to meet these expenses out of its own funds will be, within the meaning of the Constitution, a *taking* of its property for public use without compensation, and therefore without due process of law, as well as a denial to it of the equal protection of the laws."

After reviewing exhaustively the authorities on the question, the conclusion of the court is stated as follows:

"Without further discussion, we hold it to be the duty of the railway company, at its own expense, to remove from the creek, the present bridge, culvert, timbers, and stones placed there by it, and also (unless it abandons or surrenders its right to cross the creek at or in the vicinity of the present crossing) to erect at its own expense and maintain a new bridge for crossing that will conform to the regulations established by the drainage commissioners under the authority of the state; and such a requirement if enforced will not amount to a taking of private property for public use within the meaning of the Constitution, nor to a denial of the equal protection of the laws."

This case was followed by the United States Circuit Court of Appeals for the Eighth Circuit in the case of Chicago, B. & Q. Railway Co. v. Board of Supervisors of Appanoose County, Iowa, 182 Fed. 291, 104 C. C. A. 573, 31 L. R. A. (N. S.) 1117. These two cases are conclusive on the question of the taking of property within the meaning of the Constitution of the United States.

So far as the Constitution of the state of Arkansas is concerned, the question has been settled by the Supreme Court in the case of McCoy v. Plum Bayou Levee District, 95 Ark. 345, 129 S. W. 1097, 29 L. R. A. (N. S.) 396. In that case the levee was constructed so as to leave the land of the plaintiff between the river and the levee. It was alleged that, during the overflow of 1908, the levee caused the overflow water to rise at least six feet higher on plaintiff's lands than it would have risen if the levee had not been constructed. In its conclusion in that case the court said:

"We conclude that, upon the state of facts which the jury could have found under the instructions of the court to exist, the defendant could rightfully construct the levee in the manner described without liability to plaintiff for damages. It is insisted, however, that a distinction should be made because of the provision of our Constitution that 'private property shall not be taken, appropriated, or *damaged* for public use without just compensation therefor.' Article 2, § 22, Constitution of 1874. In reaching the conclusion above announced, we are not unmindful of the constitutional provision; but where no right has been violated there is no injury for which the law affords compensation. It is a case of an injury without damages."

[**3, 4**] The injury to the railway company by the construction of the levee is not a taking of property in violation of the Constitution of the United States; nor is it a taking, appropriating, or damaging of property in violation of the Constitution of the state of Arkansas. Nor is the construction of the levee across the right of way of the railway company an illegal interference with it as an interstate carrier of freight, passengers, and the United States mail. The levee can be constructed across the right of way without interfering with the movement of trains. The presumption is that it will be so constructed. It is within the power of the state to authorize the condemnation of a railway right of way for such a purpose, St. Louis & S. F. R. Co. v. Fayetteville, 75 Ark. 534, 87 S. W. 1174.

My attention has been called by counsel for the railway company to the case of Hughes v. United States, recently decided by the Court of Claims. That decision was based on the case of United States v. Grizzard, 219 U. S. 180, 31 Sup. Ct. 162, 55 L. Ed. 165, 31 L. R. A. (N. S.) 1135. The Grizzard Case in no way modifies or changes the rule in the case of Chicago, B. & Q. Railway Company v. Drainage Commissioners, supra.

The plaintiff relies on the case of Cairo, V. & C. R. Co. v. Brevoort Railway Co. (C. C.) 62 Fed. 129, 25 L. R. A. 527, and Wright v. Railway Co. (C. C.) 175 Fed. 845. Whatever may be said with regard to the reasoning of these two cases, they cannot now be followed in opposition to the rule declared by the Supreme Court of the United States, and the United States Circuit Court of Appeals for the Eighth Circuit.

There is no allegation in the bill that the defendants are attempting to construct the levee across the right of way of the railway company in violation of the statutes of the state giving the right to condemn. In the absence of an allegation to the contrary, the presumption must be that the board of directors is following the statute.

[**5**] If the amount allowed for the portion of the right of way taken for the construction of the levee is inadequate, that cannot be rectified in this suit.

The demurrer to the bill is sustained.