### MISSOURI, K. & T. RY. CO. OF TEXAS v. ROCKWALL COUNTY LEVEE IMP. DIST. NO. 3.   (No. 9334.)*

(Court of Civil Appeals of Texas. Dallas. June 28, 1924.   Rehearing Denied Oct. 18, 1924.)

**1. Eminent domain ⏱231—Concurrence of all three commissioners not essential to legal assessment of damages.**

There is nothing in Vernon's Sayles' Ann. Civ. St. 1914, arts. 6506–6529, requiring concurrence of all three commissioners in condemnation proceeding before legal assessment of damages can be made and decision rendered thereon.

**2. Statutes ⏱181(1)—Ascertainment of intent of lawmaker is primary rule of construction.**

Primary rule of construction is to ascertain and give effect to intent of lawmaker.

**3. Eminent domain ⏱231—Award of two commissioners held valid assessment of damages.**

Decision of two commissioners appointed under Acts 34th Leg. (1915) c. 146, § 38 (Vernon's Ann. Civ. St. Supp. 1918, art. 5567), to assess damages for taking land to construct levee improvement across railroad right of way, *held* valid assessment of damages, although third commissioner assessed damages in greater amount.

**4. Eminent domain ⏱47(1) — Levee district held authorized to condemn railroad right of way though not bordering on river.**

Acts 34th Leg. (1915) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5530–5584d), under which levee improvement district was organized, *held* to give it power to condemn part of right of way of railroad, some 1,100 feet west of river constituting lost line of district for levee, condemnation being reasonably necessary to purpose of district and not being inconsistent with use of right of way for railroad purposes nor detrimental to public.

**5. Eminent domain ⏱128(1)—Measure of liability stated for use of part of railroad right of way for levee.**

Where levee improvement district condemned part of railroad right of way for purpose of constructing levee across it, measure of railroad's damages was such damages as should be caused by interference with its use of right of way through building of levee and the value of such portion of right of way as should be actually taken for levee.

**6. Eminent domain ⏱95 — On condemnation of part of railroad right of way for levee, expenses of railroad in conforming to improvement held not element of compensation.**

Where levee improvement district condemned part of railroad right of way to build levee across it, *held*, that expenses of any changes in track, roadbed, or bridges, made necessary by construction of levee was not proper element of railroad's damages.

**7. Appeal and error ⏱1062(2)—Refusal to submit case on special issues held harmless error, in view of general charge.**

In suit of levee improvement district to condemn portion of railroad right of way, where court submitted in general charge proper measure of plaintiff's liability for damages on account of right of way taken, refusal to submit defendant's special issues authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, concerning such liability, was harmless error, especially where they related merely to evidentiary facts

**8. Levees and flood control ⏱6—Finding of public benefit condition precedent to creation of levee improvement district.**

Finding by commissioners' court that proposed improvement will be conducive to public health or will be public benefit is prerequisite to creation of levee improvement district under Acts 34th Leg. (1915) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5530–5584d).

**9. Levees and flood control ⏱2—Acts creating levee improvement districts held valid exercise of police power.**

In view of Const. art. 3, § 52, and article 16, § 59, Acts 34th Leg. (1915) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5530–5584d), and Acts 1918, 4th Called Sess. c. 25 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584¼–5584¼i), authorizing levee improvement districts, *held* valid exercise of police power for improvement of public health and welfare.

**10. Eminent domain ⏱47(1)—State may authorize railroad right of way for levee improvement.**

It is within state's power to authorize condemnation of railroad right of way for construction of levee improvement.

**11. Eminent domain ⏱205—Use of part of railroad right of way for levee held not to impair its use for railroad purposes, nor be detriment to public.**

Evidence *held* to show that use of part of right of way of railroad for levee improvement would not materially impair or interfere with use of way for railroad purposes, nor be detrimental to public.

Appeal from Rockwall County Court; R. L. Halford, Special Judge.

Suit by the Rockwall County Levee Improvement District No. 3 against the Missouri, Kansas & Texas Railway Company of Texas.   Judgment for plaintiff, and defendant appeals.   Affirmed.

J. M. Chambers, of Dallas, and Foree, Isbell & Ridgell, of Rockwall, for appellant.
W. P. Dumas, of Dallas, for appellee.

VAUGHAN, J.   This suit was instituted by the appellee, a levee improvement district organized under chapter 146, Acts 34th Leg-

---

⏱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted December 20, 1924.

islature 1915 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5530–5584d), for the condemnation of a section of appellant's right of way in Rockwall county for the purpose of constructing a levee across the right of way in said levee district, the levee to extend north and south, parallel with and on the west side of the East fork of Trinity river, at a mean average distance of about 600 feet inland from the river, which forms the east boundary line of the district; the levee to be about 4 miles long and to cross the right of way of appellant's main line 100 feet west of the west bank of the river, the right of way crossing the district east and west midway between the north and south boundaries. The levee is proposed to be erected for the purpose of protecting the portion of the district lying west thereof from the overflow waters of the river, and estimated to comprise about 1,800 acres of land.

Appellee is a conservation and reclamation district such as was recognized by the Supreme Court in Dallas County Levee District No. 2 v. Looney, Attorney General, etc., 109 Tex. 326, 207 S. W. 310. In the exercise of the right of eminent domain it is governed and controlled by section 38 of chapter 146, Acts of 1915 (article 5567) Regular Session, by which, among other things, the right of eminent domain is conferred upon appellee for the purpose of enabling it to acquire the fee-simple title, easement, or right of way to, over, and through any and all lands, waters, or lands under waters, private or public (except land and property used for cemetery purposes) within, bordering upon, adjacent, or opposite to its district, necessary for making, constructing, and maintaining all levees and other improvements for the improvement of a river or rivers, creek or creeks, or streams within or bordering upon its district to prevent overflows thereof, and provides that the procedure with reference to condemnation of property by said district shall be in accordance with the law for condemning a right of way by railroad companies.

A petition for the appointment of commissioners to appraise the damages was presented to the county judge of Rockwall county, on which three commissioners to assess the damages were duly appointed. The damages awarded were not concurred in by all of the commissioners; two of them awarding damages in the sum of $600 and one in the sum of $35,600. Objections to the decision of the commissioners were duly filed by appellant, one of which was that the decision of the commissioners was not unanimous. The papers were then filed with the county clerk of Rockwall county and the case entered upon the civil docket of the county court, and came on for trial at the January, 1924, term of said court, at which time appellant filed a motion asking the court to reject the assessment and decision made by the commis-

sioners because the same was not unanimous. This motion was refused and the cause was tried on January 16, 1924, with the assistance of a jury, and resulted in a judgment for appellee condemning the land and in favor of appellant in the sum of $2,104 damages, from which judgment appellant duly prosecuted this appeal, presenting same by fifteen assignments of error, which are not necessary to be set out at length as the questions presented thereby (four in number) will be duly developed and determined from point of view presented by each exception and the propositions thereunder.

[1] Appellant contends that the decision of the three commissioners appointed under Vernon's Sayles' Ann. Civ. St. 1914, art. 6508, to assess the damages sustained by appellant, should have been unanimous in order to be in accordance with the requirements of article 6522, Vernon's Sayles' Texas Civil Statutes, and that the assessment of said commissioners was not unanimous because two of said commissioners assessed the damages sustained by appellant at $600, while the other assessed same at $35,600. Therefore, same was not an assessment as required by law, and the court erred in refusing to reject same.

Two of the commissioners did assess appellant's damages at $600, and one filed a minority report to the effect that appellant was entitled to $600 actual, and $35,000 exemplary, damages.

By articles 6506 to 6529, inclusive, Vernon's Sayles' Texas Civil Statutes, the procedure for the condemnation of lands by railway companies is set out. Provision is made for the appointment of three disinterested freeholders as special commissioners to assess damages. Article 6508, Id. After such commissioners qualify and issue the necessary notice and hold a hearing, they are required to "reduce their decision to writing, stating therein the amount of damages due to the owner of such real estate, if any be found to be due, and shall date the same and sign it, and shall file the said assessment, together with all other papers connected with the case, with the county judge without delay." Article 6522, Id. In the event any commissioner is unable to, or fails to, act as such, "the county judge may at any time appoint another commissioner or commissioners to supply the place or places of those who are unable or who fail to act." Article 6523, Id. There is nothing in the statute requiring the concurrence of all three of the commissioners in condemnation proceedings before a legal assessment can be made and decision rendered thereon. The number of special commissioners is by the statute limited to three (article 6508, Id.), and this number was undoubtedly specified by the Legislature so that a decision of two, or a majority, would control; otherwise, it might be that a failure of all three commissioners to

agree would in a measure prevent a corporation or political subdivision of the state from exercising its lawful right of eminent domain.

[2] The primary rule of construction is to ascertain and give effect to the intent of the lawmaker. The intention of the Legislature in enacting a law is a law within itself and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute (Lewis' Sutherland Statutory Construction, vol. 2, § 363), and ·courts will not follow the letter of the statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the act. "Intent is the spirit which gives life to a legislative enactment." Id. §§ 347, 363, 364.

If the Legislature had intended that before a legal assessment could be made in condemnation proceedings, all three of the commissioners should concur in respect to the amount of damages, it would undoubtedly have expressed that intent in language clear and in no uncertain terms. In the following cases the above principle was recognized and applied, and we think authority amply sufficient to support our conclusion on this proposition: Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960; Long v. State, 59 Tex. Cr. R. 103, 127·S. W. 557; Dalton v. Allen, 110 Tex. 68, 215 S. W. 439.

[3] In the case at bar all three members of the special tribunal appointed to hear and determine the condemnation proceedings were present and performed the duties devolved upon them by law. Two of the commissioners agreed upon the amount of damages appellee should pay appellant for taking over $47/100$ of an acre of land, being a part of appellant's right of way. One of the commissioners seemed 'to agree with his associates as to the amount he saw fit to term "actual damages," but, in addition thereto, by his report, wanted to give appellant the sum of $35,000 as "exemplary damages." We hold that the decision of two of the commissioners awarding $600 was in conformity with law and is a valid assessment. To hold otherwise would be, in effect, to charge that the Legislature by the enactment of said law intended to do an unreasonable thing. This accusation should never be indulged in unless the language of the act compels such construction. St. L. & S. W. Ry. Co. v. Tod, 94 Tex. 632, 64 S. W. 778; Stone v. Hill, 72 Tex. 540, 10 S. W. 665.

[4] After the introduction of the evidence was closed, appellant moved the court for a peremptory instruction because the plan of the district as shown by appellee was to protect that portion of it lying west of the proposed levee from the overflow waters of the river, the levee to be located a mean distance of 600 feet west of the west bank of the river, approaching that bank at no point nearer than 200 feet, and to be located upon the land sought to be condemned, which lies 1,100 feet west of the river, contending that neither the act under which the district was created, nor any other law, conferred the right of eminent domain upon appellee for such purpose.

The appellee is an agency of the state. It is a creature of the conservation amendment to the Constitution adopted in 1917. All districts operating under that amendment are "governmental agencies and bodies politic and corporate," with power and authority to exercise such rights and functions as may be conferred by law. See Moffitt's Ann. Tex. Constitution, art. 16, § 59.

This amendment in express terms declares:

"(a) The conservation and development of all of the natural resources of this state, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydroelectric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the state are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"(b) There may be created within the state of Texas, or the state may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politie and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject-matter of this amendment as may be conferred by law."

In the organization of levee improvement districts the law makes it necessary for the commissioners' court of the proper county to find: (a) That the proposed improvements are feasible, practical, and are needed; and (b) that the levee would be conducive to public health and would be a public benefit or a public utility. Chapter 146, Acts 1915, Regular Session, § 6 (Vernon's Ann. Civ. St. Supp. 1918, art. 5534).

The appellee was organized for the purpose of reclaiming 1,800 acres of bottom land in Rockwall county, Tex., from the overflow waters of the Trinity river. These 1,800 acres are now wholly unprotected, and, in order to reclaim this land, it was necessary to condemn a part of the right of way of appellant and, in doing so, appellee was authorized to acquire by condemnation proceedings the fee-simple title, easement, or right of way to, over, and· through any and all' lands, waters, or lands under waters, private or public (except land and property assessed for cemetery purposes), "within, bordering

upon, adjacent or opposite to such district, necessary for making, constructing and maintaining all levee and other improvements for the improvement of a river or rivers, creek or creeks or streams within or bordering upon such district to prevent overflows thereof."

Under this authority condemnation proceedings cannot be restricted to the right to condemn land along the banks of such river or rivers, creek or creeks, or streams, within or bordering upon such district, to prevent the overflow of such streams when the intention clearly expressed was the right to acquire right of way, etc., as therein designated, for the purpose of building a levee to prevent the overflow of the lands within the levee district, and this, notwithstanding the levee may not be located along or contiguous to the banks of the stream or streams against the overflow of which such levee is constructed for the purpose of preventing the overflow of the land within the limits of such district, the condemnation of same being reasonably necessary to accomplish the purposes for which said levee district was organized, viz., the reclamation of the 1,800 acres of land included within the confines of same.

We therefore hold that appellee, as a governmental agency and a corporate body, was clothed with power and authority to condemn the land involved herein as being "within, bordering upon, adjacent or opposite to appellee levee district necessary for constructing a system of levees and carrying out the plan of reclamation approved by the state reclamation engineer." The appellee is seeking to condemn a portion of the right of way of appellant so that it may locate its levee upon, over, and across a portion of appellant's right of way, with the exception of the railroad track, that the condemnation or use of the land so sought to be condemned will not interfere in any manner with the operation of the trains of appellant and will not interfere with the use by appellant of its right of way, roadbed, or track. Tex. Mid. Ry. Co. v. Kaufman County Imp. Dist. No. 1 (Tex. Civ. App.) 175 S. W. 482, in which it is held that a levee district may condemn a railroad right of way spanned by trestle on showing that the right of way for a levee would not destroy or injure its use as an integral part of the railroad or materially impair or interfere with or be inconsistent with the railroad's use or be detrimental to the public. We hold that the facts of the instant case bring same within the above rule so as to subject the right of way to the condemnation proceedings instituted by appellee.

The case of Dallas Hunting & Fishing Club v. Dallas County Bois d'arc Island Levee District (Tex. Civ. App.) 235 S. W. 607, cited by appellant, was not a suit to condemn land, and that portion of the opinion relied upon by appellant in support of its position does not affect the lawful right of eminent domain conferred upon and exercised by appellee, as clearly appears from the following language contained in said opinion:

"However, we think it manifest that the purpose of chapter 44 was to create conservation and reclamation districts to reclaim river bottom lands from overflow waters which come upon them, by building levees to stop the water at the edge or boundary of the levee districts, whether the levee district may comprehend lands removed a distance from the channel of the stream itself or which may abut upon the channel. On the other hand, we think it equally clear that the purpose of chapter 146 [acts of the 34th Legislature, Vernon's Sayles' Ann. Civ. St. Supp. 1918, art. 5530, et seq.] was to make provision for the construction and maintenance of levees and other improvements along rivers and other streams by building the embankments along and contiguous to the channels themselves, to prevent the stream from overflowing. The law in the one instance provides for the protection of lands against the waters from rivers and streams after they have already overflowed from them, and the other provides for confining the waters within the channels so as to prevent overflow."

Bois d'arc Island district was created under another statute, and that case is not in the least analogous to the case at bar. Chapter 146, Acts 1915, Regular Session, chapter 25, Acts 1918, 4th Called Session (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584¼– 5584¼i), and chapter 44, Acts 1918, 4th Called Session (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584tt), are three distinct and separate laws on the subject of levee districts in this state and should be considered separate and apart in the organization of levee districts; yet each is a part of the condemnation and reclamation system of the state, each having its proper place in such system. The district involved in the Bois d'arc Island suit, supra, was created under chapter 44, Acts 1918, 35th Legislature, 4th Called Session, and the decision of this court in that case, as above stated, in no way challenges the right of eminent domain expressly conferred upon appellee, which district was created under chapter 146, Acts 1915.

[5-7] Immediately after the introduction of the evidence was closed, appellant presented to the court its written request that the cause be submitted to the jury upon special issues instead of by general charge as provided by (Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a. At this time appellant presented to the court, in writing, the following special issues:

"Special Issue No. 1. Will the construction of the proposed levee, in the proposed manner, make it necessary for defendant to make any changes in track or roadbed in order that the operation of its railroad may be safe, efficient, and convenient as it is now without such levee?

"Special Issue No. 2. If you find that the construction and maintenance of the proposed levee in the manner and form as proposed by plaintiff, will make it necessary for defendant to make any changes in its track and roadbed in order to operate its railroad with the same degree of safety, efficiency, and convenience as without such levee, then state what will be the reasonable expense to defendant to make such changes.

"Special Issue No. 3. Will the construction and maintenance of the proposed levee across defendant's right of way and track, with the proposed gap in the levee at the track, depreciate the value of the remaining portion of the right of way, track, and roadbed thereon, outside the portion described in the petition to condemn?

"Special Issue No. 4. If you find and believe that the construction of the proposed levee will necessitate changes in the right of way and roadbed of defendant in order that it may be operated with the same degree of safety, efficiency, and convenience as without such levee, and if you further find that such necessity for such changes will depreciate the value of the remaining portion of defendant's right of way, roadbed, and track, outside that to be condemned for the levee, then state in what sum it will be so depreciated.

"Special Issue No. 5. What is the market value of defendant's right of way as shown by the evidence which lies between the proposed crossing of the levee over the right of way, and the west bank of the East fork of the Trinity river?"

This request was not acceded to, on the ground that there was but one issue for the jury to consider, and that it would be unnecessary to submit the cause on special issues, and the court gave the case to the jury by general charge as follows:

"Gentlemen of the Jury: The court charges you that the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the use of a part of the railroad right of way for levee will not destroy or materially injure its use as an integral part of the railway, or be detrimental to the public.

"The court further charges you that under the law the reclamation and protection of lands subject to overflow by reason of storm and flood waters in this state is a public right, and that a levee improvement district, created for such object or purpose is a governmental agency, and, as such, has power and authority to acquire an easement or right of way to, over, and through any and all lands, waters, or lands under waters, private or public (except land and property used for cemetery purposes), within, bordering upon, adjacent, or opposite to such district, necessary for making, constructing, and maintaining all levees and other improvements for the improvement of a river, or creek, or stream within or bordering upon such district to prevent overflows thereof, and in the event of the condemnation, or the taking, damaging, or destroying of property for such purposes, the levee improvement district shall pay to the owner thereof adequate compensation for the property taken, damaged, or destroyed.

"The court further charges you that the measure of damages in a case of this character is the damages sustained by reason of the interference of the use by the defendant railroad company of its right of way by building the levee over and across a part of such right of way, and the value of such portion of the railroad right of way as will be actually taken for the construction of the levee.

"The court further charges you that the imposition upon the defendant railroad company of the cost and expense, if any, of building or rebuilding its dump track, roadbed, or bridges, which may be made necessary by the work of reclaiming and protecting the overflowed lands in Rockwall county levee improvement district No. 3, as proposed to be done by the duly authorized officers and agents of said levee district, does not amount to a taking of, or legally recoverable damages to, property for public use, and you will in this case consider no such damages, if any such is shown.

"Excluding such damages, if any, as is not recoverable under the foregoing instruction, you will consider and say by your verdict what damages, if any, the defendant railroad company will suffer by the condemnation and use of its railway dump as it now exists, for levee purposes as sought in this action, and the value of such portion of the railroad right of way as will be actually taken for the construction of plaintiff's levee.

"The form of your verdict may be as follows: 'We, the jury, find that the defendant, Missouri, Kansas & Texas Railroad Company of Texas, is entitled to recover of and from the plaintiff, Rockwall county levee improvement district No. 3, the sum of —— dollars damages.' (You filling in the blank the amount of such damages.) The verdict shall be signed by the juror whom you select as your foreman.

"You are the exclusive judges of the facts proven, of the credibility of the witnesses, and the weight to be given their testimony; but the law of the case you must receive from the court as herein given you, and be governed thereby."

If the trial court was correct as to the measure of appellee's liability to appellant for damages on account of that portion of its right of way appropriated by and other part involved, on account of the condemnation proceedings instituted by appellee, then the refusal to submit the case on special issues as requested was not material error; otherwise, same would be reversible error.

Appellant contends that the court was in error in this respect: (1) Because the instructions given denied to appellant the right to recover any damages sustained by it by reason of the depreciation in value of the portion of appellant's right of way and roadbed remaining and aside from that portion of the right of way described in the application for condemnation; and (2) denied it the right to recover as damages the expense of making any changes in its track, roadbed, and bridges made necessary by the construction of the proposed levee; and, further, that same denied appellant the right to recover the depreciation in value of the portion of its property not taken in such condemnation proceedings, basing its contentions thus made on the following provi-

sions of section 38, ch. 146, Acts 1915, to wit:

"All condemnation proceedings or suits in the exercise of eminent domain under this act shall be instituted under the direction of the district supervisors, and in the name of the levee improvement district, and all suits or other proceeds for such purposes and for the assessing of damages, and all procedure with reference to condemnation, the assessment of and estimating of damages, payment, appeal, the entering upon the property pending the appeal, etc., shall be in conformity with the statutes of this state for the condemning and acquiring of right of way by railroad companies."

To give this language the construction contended for by appellant would be to put the Legislature of the state of Texas in the attitude of deliberately placing an obstructive burden upon governmental agencies authorized to exercise the right of eminent domain for the benefit of the public which might have the effect, in a large measure, of denying the public the right of eminent domain. It would take clear, convincing, and positive language to that effect before this court would feel authorized to hold that it was the intention of the Legislature to make such an invidious distinction in the act under which appellee was authorized to exercise the right of eminent domain as a governmental agency of this state. On a most careful and thorough examination we fail to find in this act language that would justify us to so hold. That being the case, the trial court properly interpreted the effect to be given to said language in submitting the case to the jury. It is true the court instructed the jury in general terms in reference to those matters necessary to be considered in arriving at its answer to the one issue submitted. This would have been necessary to have been given in a different form in the way of defining terms, etc., used, had the case been submitted on special issues; hence we conclude that the refusal of the court to submit the case on special issues was harmless error, especially as same related merely to evidential facts. Am. Surety Co. v. Hill County (Tex. Civ. App.) 254 S. W. 247; Oaks v. West (Tex. Civ. App.) 64 S. W. 1033; Cushman v. Masterson (Tex. Civ. App.) 64 S. W. 1031; Gaertner v. Stolle (Tex. Civ. App.) 238 S. W 252; Haile v. Johnson, 63 Tex. Civ. App. 199, 133 S. W. 1088.

It was the purpose of the supervisors of appellee levee improvement district to build the levee across the right of way dump of the appellant, leaving a gap so that trains could pass through when necessary. It was alleged by appellee, and was shown by the record, that the condemnation or use of the portion of the railroad right of way (being not quite one-half acre) would not interfere in any manner with the operation of the trains of appellant, and would not interfere with the use by appellant of its road-

bed, right of way, or track; that the 1,800 acres in this levee district are now subject to overflow and are to be reclaimed by building the proposed levee; that the plan of reclamation with the levee across the railroad higher than the dump would carry out the reclamation of this 1,800 acres and would be feasible and practicable.

[8] The levee act of 1915 in respect to condemnation proceedings merely provides that an improvement or levee district shall follow the procedure prescribed by the statutes for the condemning and acquiring of rights of way by railroad companies. Acts 1915, ch. 146, § 38. Its only effect was to incorporate the other statutes for certain purposes into the levee act. It does not even indirectly provide that the statutory measure of damages in condemning of railroad rights of way apply in condemnation proceedings instituted by the duly authorized officer of the levee district. The method of procedure in railroad condemnation suits has been in our statutes for many years. It is one most familiar to the people, so, in order to simplify matters, it no doubt was adopted by the Legislature in the enactment of the levee statute. It should be kept in mind that something else enters into the question of the creation of the levee improvement district than the benefit to or enhancement in the value of the lands in the district to be reclaimed from overflow. The commissioners' court must find that the proposed improvements will be conducive to public health or will be a public benefit, or a public utility, as a prerequisite to the creation of the district. Acts 1915, ch. 146, § 6. These are matters that fall peculiarly within the general police powers of the state. In condemnation suits between telegraph and telephone companies and railroad companies, the courts have held that the measure of damages was compensation for the diminution in the railroad company's right to use its track, caused by the use to which the right of way would be put by the telegraph and telephone company, and under no conceivable state of facts could the value of the right of way to the telegraph and telephone company be made the measure by which to determine the damages sustained by the railroad. Tex. & N. O. R. Co. v. Postal Tel. Co. (Tex. Civ. App.) 52 S. W. 108; Tex. Mid. R. R. v. S. W. Tel. Co. (Tex. Civ. App.) 57 S. W. 312; G. C. & S. F. Ry. Co. v. S. W. Tel. & Tel. Co. (Tex. Civ. App.) 52 S. W. 86; S. W. Tel. & Tel. Co. v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 52 S. W. 106.

[9] The statutes (chapter 25, Acts 1918, 4th Called Session, and chapter 146, Regular Session) authorizing the creation of levee improvement districts constitutes a valid exercise of the police power of the state of Texas for the improvement of the public health and welfare; they aim at the special

development of the state's resources, they comprehend, as well, the general welfare of the state. Const. of Tex. art. 3, § 52; Id., art. 16, § 59; Drainage Dist. v. Higbee (Tex. Civ. App.) 149 S. W. 385; Ogburn v. Ward County D. D. (Tex. Civ. App.) 230 S. W. 1036; Hagar v. Recl. Dist. No. 108, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569.

The emergency clause of the levee act of 1915 recites that the laws then in force "relating to reclamation and the construction of levees to constrain and regulate the flood waters of the streams of the state are incomplete and inadequate to protect the lives, health and property of the citizens of the state from floods, freshets and overflows."

The state has no power to make a man improve his land, if that is the sole aim of the law. He can leave it in the same state that nature made it if he desires; but, as soon as a community of persons is affected, a new element appears. The health of the community may be in danger by the marshy ground, or it may be that the improvement of the land would be a common benefit and a public benefit, and one unwilling landowner cannot stand in the way. As well said by Justice Clarke, in Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215, it is an "obvious fact that anything that develops the territory which a railroad serves must necessarily be of benefit to it."

In Mason City & Fort Dodge R. Co. v. Board of Supervisors, 144 Iowa, 10, 121 N. W. 39, the court said:

"Nor do we think that expense of building or rebuilding a culvert or bridge over a ditch excavated in the bed of a natural water course passing though a right of way a proper element of damages in such a case. The increased volume of water and the improvement to carry it away are but the results of better drainage of the tillable lands on either side of the track which the company was bound to anticipate. Of course, a railroad company may not be required to widen or deepen a water course through its right of way at its own expense any more than this may be exacted of a landowner, but the public has the undoubted authority to widen and deepen such a course, even though this shall render necessary the rebuilding of the bridge or culvert, and, when this is done, the expense is a proper one for the railway company to bear."

[10] The East fork of the Trinity river in Rockwall county, Tex., is a natural waterway. When the Missouri, Kansas & Texas Railroad Company of Texas constructed its roadbed and track across the East fork bottom, and laid the foundations of its bridges over that river, it did so subject to the rights of the public in the use of that natural water course, and also subject to the possibility that new conditions and circumstances and future public necessities might, in the judgment of the state, reasonably require a material change in the methods used in the operation of trains on that section of its road. And it is clearly within the power of the state to authorize the condemnation of a railroad right of way for the construction of a levee across the same. St. L. Ry. Co. v. Miller Levee Dist. No. 2 (D. C.) 197 F. 815.

In the case of Chicago, B. & C. R. Co. v. Board of Supervisors, 182 F 291, 104 C. C. A. 573, 31 L. R. A. (N. S.) 1117, the court held:

"The duty of the railroad to conform its roadbed to the requirement of such public easements as highways and ditches is an incident of its right to construct and maintain its road. The whole subject has been clearly defined in the long line of cases in which railroads have been charged with the expense not only of building fences along their right of way, and cattle guards, but also with the expense of constructing crossings over new highways, both public and private, and also with the expense of constructing bridges and viaducts so as to obviate crossings at grade whenever the public welfare required such a change. It has been uniformly contended by railroads that such expenses constituted a taking of their property for public use without just compensation, a deprivation of their property without due process of law, and a denial to them of the equal protection of the law. While there has been some conflict in the decisions, the overwhelming weight of authority at the present time is that such requirements are just, and are not subject to either of the constitutional objections mentioned."

The opinion further declares:

"The claim of the plaintiff in this case is peculiarly devoid of merit. It has maintained for years wooden trestles at the points where its lines are intersected by the drain. These structures are temporary and perishable. In their place it demands that permanent bridges, with spans and concrete abutments, shall be built and maintained at public expense across the drain. That would not be compensation for injury to private property, but simple enrichment of the company out of the public treasury."

In the trial of this case before a jury in the county court, appellant introduced in evidence, over the objection of appellee, a document showing the estimated cost of the improvements claimed by appellant necessary to conform the railway property to the plan of the levee district, and which shows a total estimated cost of $275,085. Included in tihs estimated cost is a "reinforced concrete trestle" about 1,075 feet long. None of the bridges of the appellant over the East fork of the Trinity river are constructed of concrete material.

It was contended by the railway company in St. Louis Southwestern Ry. Co. v. Miller Levee District No. 2 (D. C.) 197 F. 815, that, having legally constructed its bridge and approaches under conditions then existing, at a height and in a manner warranted by the best engineering skill and foresight, it cannot now, by a change of conditions authorized

and directed by the state, be put to the expense of raising and reconstructing its bridge and approaches. In other words, it having some years ago at great expense adjusted itself to conditions as they then existed, those conditions must remain unchanged unless it is compensated for the expense which a contemplated change will necessitate. But the court held:

"The injury to the railway company by the construction of the levee is not a taking of property in violation of the Constitution of the United States; nor is it a taking, appropriating, or damaging of property in violation of the Constitution of the state of Arkansas. Nor is the construction of the levee across the right of way of the railway company an illegal interference with it as an interstate carrier of freight, passengers, and the United States mail. The levee can be constructed across the right of way without interfering with the movement of trains. The presumption is that it will be so constructed. It is within the power of the state to authorize the condemnation of a railway right of way for such a purpose."

The Supreme Court of the United States, in Chicago, B. & Q. Ry. v. Drainage Commissioners, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175, held that it was the duty of the railroad company in that case, at its own expense, to remove from the creek the present bridge, culvert, timbers, and stones placed there by it, and erect at its own expense, and maintain, a new bridge for crossing such creek conforming to the regulations established by the drainage commissioners, under the authority of the state; and such would not be the taking of private property for public use, within the meaning of the Constitution, nor to a denial of the equal protection of the laws. Mr. Justice Harlan, speaking for the court, states the case as follows:

"The concrete case arising upon the petition and the demurrer is this: A public corporation, charged by law with the duty of causing a large body of lands, principally swamp and slough lands, to be drained and made capable of cultivation, has, under direct legislative authority, adopted a reasonable and suitable plan to accomplish that object. That plan requires the enlarging and deepening of the channel of a natural water course running through the district, which is the only natural outlet or way of drainage of the lands of the district—the best and only practicable mode by which the lands can be made tillable. But that plan cannot be carried out unless the timbers and stones in the creek—placed there by the railway company when it constructed the foundation for its present bridge—are removed. The timber and stones referred to cannot, however, be removed without destroying the foundations of the present bridge and rendering it necessary (if the railway company continues to operate its road, which we assume it intends to do) to construct another bridge with an opening underneath wide enough to permit a channel sufficient to carry off the water of the creek as increased in volume under the drainage system adopted by the commissioners.

"The contention of the railway company is that, as its present bridge was lawfully constructed, under its general corporate power to build, construct, operate and maintain a railroad, in the county and township aforesaid, and as the depth and width of the channel under it were sufficient, at the time, to carry off the water of the creek as it then flowed, and now flows—the foundation of the bridge cannot be removed and its use of the bridge disturbed, unless compensation be first made or secured to it in such amount as will be sufficient to meet the expense of removing the timbers and stones from the creek and of constructing a new bridge of such length and with such opening under it as the plan of the commissioners requires. The company insists that to require it to meet these expenses out of its own funds will be, within the meaning of the Constitution, a taking of its property for public use without compensation, and, therefore, without due process of law, as well as a denial to it of the equal protection of the laws."

After reviewing exhaustively the authorities on the question, the conclusion of the court is stated as follows:

"Without further discussion we hold it to be the duty of the railway company, at its own expense, to remove from the creek the present bridge, culvert, timbers and stones placed there by it, and also (unless it abandons or surrenders its right to cross the creek at or in the vicinity of the present crossing) to erect at its own expense and maintain a new bridge for crossing that will conform to the regulations established by the drainage commissioners, under the authority of the state; and such a requirement if enforced will not amount to a taking of private property for public use within the meaning of the Constitution, nor to a denial of the equal protection of the laws."

[11] We think the evidence adduced on the trial of this case shows that the use of a part of the right of way of appellant for the construction and maintenance of the levee will not materially impair nor interfere with or be inconsistent with the use of the same for railway purposes, nor will such use be detrimental to the public.

B. F. Williams, the district engineer, testified that—

The "levee will drop down to the top of the ties, and, of course, nothing is to be built on the face of the dump of the railroad; but, passing over to the south side of the dump, the levee will be built up approximately nine feet above the ties and constructed on down the river, leaving a notch in the levee through which the track and trains will pass. Then, if the waters should get up over the track and begin to flow through this gap back into the reclaimed area, the trains could not run, and we propose to build up the gap with sacks filled with sand until the water goes down and then remove the sacks, and the trains may then go on without more danger. * * * It will not be necessary to use the sand bags unless the water gets high enough to flow over the track. * * * This plan has been worked in other levee districts of which I was district engineer. One of such districts is Kaufman county levee dis-

trict No. 1. * * * They use sand bags in said Kaufman county levee district No. 1. They have been practicing that method 'of protection of the district since 1915."

Finding no error in the proceedings in the court below, all of appellant's assignments of error, as well as propositions thereunder, are overruled, and its judgment is affirmed.

Affirmed.